**UNITED STATES of America, Appellee,**

**v.**

**David Arthur GEAREY, Appellant.**

**No. 519, Docket 31403.**

United States Court of Appeals Second Circuit.

Argued June 20, 1967.

Decided July 3, 1967.

---

Marvin M. Karpatkin (Rhoda H. Karpatkin, Karpatkin, Ohrenstein & Karpatkin, New York City, on the brief), for appellant.

Paul K. Rooney, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, John S. Allee, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge.

We previously vacated the conviction of David Arthur Gearey for refusing to submit for induction into the armed forces, in violation of 50 U.S.C. App. § 462(a), and remanded the case to the District Court for a hearing on areas that were in need of elucidation. 368 F.2d 144 (1966). Judge Murphy, who had been the trial judge, conducted the hearing. Thereafter, he reinstated Gearey's conviction and sentence of 2 years' imprisonment. Appellant asks us, once more, to set aside his conviction, claiming, *inter alia,* that the District Court failed at the hearing to follow the directions contained in our opinion. In addition, he urges that the Local Board's refusal to reclassify him as a conscientious objector was based on an erroneous view of the law.

## I.

The facts leading to Gearey's conviction are set forth fully in our prior opinion and we shall therefore avoid a detailed recital of the tortuous Selective Service proceedings that stretched over a 6-year period. Between October 1960, when Gearey first registered with his Local Board, and January 1965, he received student deferments, never claiming to be a conscientious objector. In mid-February 1965, appellant's Draft

Board was notified by St. Francis College that Gearey was no longer enrolled as a student. When appellant failed to provide proof of attendance, the Board revoked his student deferment (2-S) and reclassified him I-A (available for military service). On April 19, an Order to Report for Induction on May 5 was mailed to appellant. But on April 23 Gearey asked that his I-A classification be reviewed and that the date of induction be postponed. The Board complied by rescheduling his induction for July.

It was not until May 24, however, that Gearey for the first time asked the Board to send him the special questionnaire for conscientious objectors (SSS Form #150). After the form was returned to the Board, Gearey was invited to appear for an interview on July 6. Upon the conclusion of that hearing, Gearey was informed by the Board that it did not believe he was a "genuine c.o." and, therefore, a change in his classification was not warranted.[1] Two days later appellant appeared for induction, but refused to take the symbolic step foward when ordered to do so. He was subsequently arrested, tried by Judge Murphy, sitting without a jury, and convicted.

## II.

On his first appeal, Gearey's principal argument was that he had been improperly denied the procedural safeguards (including the right to present his case to the Selective Service Appeal Board) contained in § 6(j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j).[2] The government,

---

[1]. The following summary of that hearing was prepared by the Board:

Registrant interviewed, had decided just recently to become a c.o., said he had been thinking about it but never mentioned it. We reviewed the c.o. # 150, also reviewed letter sent by Bishop Ford High School. Registrant claims he is not working there nor that he would definitely be working there in September. Said he would like to go to Europe and take pictures since this is the vocation he wants to pursue or maybe teach when he returns. The board after reviewing the evidence sub-

mitted and registrant's claims felt he did not qualify to be a genuine c.o. All facts considered did not warrant a change in classification. He was advised to report as scheduled. Vote was 4 to 0.

[2]. That section provides in part that:

Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the

on the other hand, contended that the Local Board was barred from considering appellant's claim of conscientious objection by 32 C.F.R. § 1625.2, which provides in part:

The local board may reopen and reclassify anew the classification of the registrant * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

We recognized that § 1625.2 was a reasonable regulation, designed to require registrants to raise their claims for deferment as soon as they had matured, thereby avoiding a process of endless challenges. Any other construction, we believed, would work havoc upon the Selective Service System and manpower quotas could rarely be met with any reasonable degree of certainty. We therefore concluded that it was entirely just to require that claims be raised within reasonable time limits in the interest of orderly administrative proceedings. Thus, it was proper to apply § 1625.2 to registrants whose claims, though maturing *before* an Order to Report for Induction had been mailed, were not presented to the Board until *after* the receipt of that order. Such individuals, it seemed clear to us, were afforded ample opportunity to raise their claims before receiving an order to report, and had no justifiable complaint when the Board refused to reopen their classification.

But, we went on to note, "[t]he considerations are quite different * * * when a claim of conscientious objection, raised for the first time after receipt of an induction notice, is based on a claim *which had not previously matured.* * * * It would be improper to conclude that an individual is not a genuine conscientious objector merely because his beliefs did not ripen until after he received his notice * * *." 368 F.2d at 149–150. (Emphasis added; footnote omitted.) This country's long history of exempting conscientious objectors, together with the statutory rights afforded to such claimants, led us to conclude that one who raised a claim of conscientious objection promptly after it matured, had a right to have the Board consider his request for reclassification—even if the claim was not raised until after an induction notice had been sent. Applying these principles to Gearey's case, we concluded that the District Court should determine whether the Board had erroneously refused to consider appellant's claim solely because it was not raised until after he received his induction notice.

Upon remand, Judge Murphy conducted a hearing at which Board Chairman Frank Barbiere, Board Secretary William Hatterschied, and Board Member Thomas Elmezzi were questioned by an Assistant United States Attorney, and then subjected to intense cross-examination by defense counsel.[3] The Judge, however, declined to permit Gearey to testify or to introduce in evidence a memorandum (Defendant's Exhibit A for Identification) containing his recollections of the July 6 interview with the Board.

Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. * * * If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board.

3. James P. McGrattan, the other member of the Board who interviewed Gearey, was unable to recall appellant or the interview.

Based upon the testimony elicited at this hearing, Judge Murphy concluded that when the Board interviewed Gearey on July 6, the members were ready to reclassify him as a conscientious objector, despite the induction notice, if they could be persuaded that his claim was sincere. Judge Murphy found that the Board believed that Gearey "was not then, and never had been a genuine conscientious objector," 266 F.Supp. 161 (S.D.N.Y.1967) and for this reason refused to reclassify him. The District Judge also held that the evidence adduced both at the trial and at the remand indicated that there was a rational basis for this conclusion, and, accordingly, he reinstated Gearey's conviction.[4]

### III.

Two of appellant's claims need not detain us long. Gearey argues that the testimony of the Board members demonstrated that they rejected his claim of conscientious objection either "exclusively or principally because of its lateness," and that this was contrary to the rule of law announced in our earlier decision. Our response to this is that appellant misreads the opinion in *Gearey I*. We remanded the case because we were uncertain whether the Board had refused to reopen Gearey's classification "on the ground that [he] had not advanced his claim before the mailing of the induction notice, even though the claim had not matured until later." 368 F.2d at 151. The District Court, therefore, was to determine whether the Board had refused to *consider* appellant's claim simply because of the late date at which it was raised. But we explicitly noted that "the belatedness of a claim may be a factor in assessing its genuineness." Id. at 150.

Our review of the record reveals overwhelming support for Judge Murphy's finding that the members of the Board did consider Gearey's claim despite the receipt by him of an induction notice, and that he would have been reclassified if his conscientious objection claim were genuine.[5] While it appears that the belated nature of the claim did cause skepticism concerning its sincerity, we can see no impropriety in considering this element. In any event, this was but one of several factors which the Board relied upon in denying appellant's claim. See part IV, infra.

Equally without merit is Gearey's contention that the Local Board failed to follow the procedures set forth in our prior decision, since no effort was made to determine when Gearey's beliefs matured. Here too, appellant has misread our opinion. We were merely setting forth guidelines to be followed by Local Boards in the future when confronted with a post induction notice claim of conscientious objection.

> [T]he Local Board must first determine when an applicant's beliefs matured. If the Board properly concludes that the claim existed before the notice was sent, the classification may not be reopened. If the Board finds, however, that the applicant's beliefs ripened only after he received his notice, and that his beliefs qualify him for classification as a conscientious objector then a change in status would have occurred "resulting from circumstances over which the registrant had no control," and he would be entitled to

---

4. Judge Murphy also ruled that Gearey's beliefs had matured before the induction notice was sent to him. Because we agree with Judge Murphy that the Board rationally concluded that Gearey was not a genuine conscientious objector, we find it unnecessary to consider this alternate holding.

5. Member Barbiere, for example, gave the following testimony:

> The Court: Were you committed on one line of thinking or some other line?

> The Witness: We were pretty wide open to accept if he came in with a good reason. We were hoping for a good reason.

> The Court: You would have accepted him as a conscientious objector?
> The Witness: We would.
> The Court: If you were satisfied?
> The Witness: Yes, we would. [Record of Hearing at 91.]

be reclassified by the Local Board. 368 F.2d at 150. (Footnote omitted.)

■ This procedure was devised in order to insure that Boards will hereafter reach the merits of a registrant's claim of conscientious objection, despite its assertion after the receipt of an induction notice, provided his beliefs had not matured before that time. But when the record reveals, as it does in the present case, that the Board members have in fact considered the registrant's claim on its merits, and have rejected it only because they believe that it is not genuine, it would be labor in vain to require the Board to determine when the claim matured. We made this clear in *Gearey I* when we instructed the District Court that:

> If [the Board] meant either that Gearey never was "a genuine c.o." *or* that whatever his beliefs were on the subject, they had matured before the induction notice was sent, and if the judge is convinced of the rationality of such a view, Gearey's conviction may stand; otherwise the indictment must be dismissed. 368 F.2d at 151. (Emphasis added; footnote omitted.)

## IV.

Gearey raises two other arguments which require further analysis. He contends that his conviction must be reversed because the Board relied on an erroneous reason in refusing to reclassify him. Appellant refers us specifically to the testimony of members Barbiere and Elmezzi who, he says, stated that Gearey did not qualify as a conscientious objector because he allegedly answered, in response to pointed queries, that he would use force to ward off an attack on his "girl" or other loved ones.

■ It is true, as appellant contends, that a registrant's belief in the use of force in self-defense is not inconsistent with a conscientious objection to participation in war in any form. See Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); Jessen v.

United States, 212 F.2d 897 (10th Cir. 1954) (footnote omitted); United States v. Hartman, 209 F.2d 366 (2d Cir. 1954); United States v. Pekarski, 207 F.2d 930 (2d Cir. 1953); Taffs v. United States, 208 F.2d 329 (8th Cir. 1953), cert. denied, 347 U.S. 928, 74 S.Ct. 532, 98 L.Ed. 1081 (1954); United States v. Parmiter, 173 F.Supp. 677, 687–689 (S.D.N.Y.1959). But in each of the cited cases the evidence was *uncontroverted* that the registrant was opposed to participation in war.[6] In such circumstances, reversal was proper because "[a] person's willingness to use force in self-defense is not a valid objection to denial of conscientious objector status *where other evidence of his opposition to participation in war because of religious belief is undisputed.*" Taffs v. United States, 208 F.2d at 331. (Emphasis added.)

In this case, by contrast, the record is clear that there is no substance to any contention that Gearey's opposition to war was "undisputed." Indeed, the sincerity of his views was the very issue before the Board; and, it is clear from the testimony that many unquestionably vaild considerations led the Board members to reject the genuineness of appellant's claim. For example, they observed Gearey's demeanor at the interview and testified that he seemed to be principally concerned with "furthering his education by going to Europe and taking pictures," and not with being reclassified as a conscientious objector. The members also stated that Gearey had refused to reveal his reasons for rejecting a teaching position at Bishop Ford High School which he had previously indicated he would accept, and that between June 7 and July 6, 1965 he denied, affirmed, and again denied that he was a member of the Catholic Church. Finally, the Board members were skeptical of Gearey's claim because of the entire untidy history of vacillation disclosed by his numerous requests for deferments over the 6-year period on diverse grounds, and his failure to seek reclassification as a conscientious

---

6. In *Sicurella*, it was admitted that the registrant was sincere in his beliefs, and in all the other cases the defendants were Jehovah's Witnesses.

objector until post induction notice. They were bolstered in their skepticism by what they characterized as his "evasive" responses at the July 6 interview.

■ It is well established that the scope of judicial review in Selective Service cases is exceedingly narrow.[7]

"[I]t is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 346 U.S. 389, 396 [74 S.Ct. 152, 157, 98 L.Ed. 132] (1953). The classification can be overturned only if it has 'no basis in fact.' Estep v. United States, 327 U.S. 114, 122 [66 S.Ct. 423, 427, 90 L.Ed. 567] (1946)." Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428.

■ The record before us supplies more than ample evidence to support the Board's conclusion that Gearey was not sincere in his belief; and in cases involving conscientious objectors, "any fact which casts doubt on the veracity of the registrant is relevant." Witmer v. United States, 348 U.S. at 381–382, 75 S.Ct. at 396.

■ Moreover, we see no merit to Gearey's contention that his conviction must be reversed because the Board in denying his claim *may* have relied to some extent on his answers regarding the use of force in self-defense. The deci-

sions cited by appellant[8] are clearly inapposite; there judgments were reversed because there was a firm basis for believing that the registrant had been classified pursuant to a mistaken notion that his beliefs did not fall within the statutory standards for conscientious objection—in the various cases, ·the Department of Justice had incorrectly advised the Selective Service System that the registrant's beliefs did not qualify under the statute—and the reviewing court thus could not determine whether the denial of the registrant's claim was based upon a proper or an improper ground. We face no such quandary here, however, since we have no sufficient basis for believing that the Board utilized an improper standard in denying Gearey's claim; to the contrary we have the benefit of the testimony of the Board members revealing beyond question that valid considerations led to their rejection of Gearey's claim.

### V.

■ Lastly, we consider Gearey's argument that the District Court erred by refusing to permit appellant to testify or to introduce in evidence the memorandum containing his recollections of the July 6 interview with the Board. We have already noted that this case was remanded for the limited purpose of determining whether the Board refused to consider Gearey's claim because it had been raised post Notice to Report for Induction. We cannot see the relevance

---

7. 50 U.S.C. § 460(b) (3) provides that decisions of the Local Boards are "final" except for administrative review. The Supreme Court has interpreted this finality to mean that:

    Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification

which it gave the registrant. United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 864, 13 L.Ed.2d 733 (1965), quoting Estep v. United States, 327 U.S. 114, 112–123, 66 S.Ct. ·423, 90 L.Ed. 567 (1946).

8. Sicurella v. United States, supra; United States v. Jakobson, 325 F.2d 409 (2d Cir.1963), aff'd sub nom. United States v. Seeger, supra; Kretchet v. United States, 284 F.2d 561 (9th Cir.1960); Ypparila v. United States, 219 F.2d 465 (10th Cir. 1954); Shepherd v. United States, 217 F. 2d 942 (9th Cir.1954); United States v. Hagaman, 213 F.2d 86 (3d Cir.1954); United States v. Erikson, 149 F.Supp. 576 (S.D.N.Y.1957).

of Gearey's testimony to this issue. Certainly, he could not reveal the *mens* or thought processes of the Board members.[9] And we cannot overlook the fact that despite intense cross-examination, the members remained steadfast in their assertion that Gearey's claim was considered on its merits and that they were prepared to reclassify him if deserving, but declined to do so because they believed his claim was not sincere.

The record reveals instead that counsel desired Gearey's testimony so that he could introduce the memorandum of the July 6 interview.[10] In any event, substantial portions of that document were placed before the Court during the cross-examination of the Board members. And since Gearey included the memorandum in his Appendix on this appeal, we have considered its contents as if the exhibit were in evidence. We see nothing in it, however, which would indicate that the Board members refused to give consideration to appellant's claim; rather, the document reveals that the members made a conscientious effort to determine whether Gearey's claim was genuine. And, the memorandum does not reveal that the Board had no basis upon which it could reasonably have concluded that appellant was not sincere in asserting a claim of conscientious objection. In these circumstances, we cannot say that the District Court's refusal to permit Gearey to testify at this limited hearing, or its failure to receive in evidence the memorandum, constituted reversible error.

We have considered appellant's other claims and find them equally lacking in merit.[11]

Judgment affirmed.

---

9. The following colloquy illustrates that Gearey was not prepared to so testify:

> Mr. Karpatkin: Well, I would like to say this first, your Honor. Obviously, I am aware of the unusual nature of this proceeding, as the rest of us are, and if your Honor is not prepared to grant the relief which I am going to ask you to grant either by this motion or application I want to argue before you, then I would want to put Mr. Gearey on the stand.
>
> The Court: Well, I would like to address myself to that now. I gathered from the various questions that you do propose to call him and to ask him the questions that were the basis really of the questions you asked the members of the Board. I take it you have in your possession some kind of memorandum he made which he says was his recollection of what transpired that evening. Whether he made it or not, I don't know. But it is that that you propose to have Mr. Gearey testify to, I guess?
>
> Mr. Karpatkin: Yes, your Honor.
>
> The Court: His recollection of what he remembers of what transpired on the evening of July 6th?
>
> Mr. Karpatkin: Yes, your Honor.

[Record of Hearing at 194–95].

Counsel's offer of proof at the first trial also reveals that appellant was not planning to testify as to the state of mind of the Board members. See Record of Trial at 95–99.

10. "Mr. Karpatkin: May I respectfully say, your Honor, that I propose to call Mr. Gearey for the purpose of seeking to introduce into evidence a certain memorandum." Record of Hearing at 197.

11. We reject, for example, appellant's argument that United States v. Vincelli, 215 F.2d 210 (2d Cir.1954), which we considered in the first *Gearey* case, stands for the principle that, upon the presentation of new information of a non-frivolous nature, the Board must reopen a registrant's classification, even if it decides to adhere to the prior classification. The cases cited by appellant, which have interpreted *Vincelli* clearly indicate that the Board must reopen only if the registrant has made out a prima facie case, based on objective facts, that he is entitled to be reclassified. See, e.g., United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966) (prima facie case that registrant was entitled to a hardship exemption). Gearey, however, made no such showing. Moreover, in the cases referred to by appellant, the request for reclassification was made *before* the registrant had been sent an induction notice, so that the Board had the power to reopen without a showing that "there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

We also decline to reconsider our prior holding that Gearey was not authorized to appeal, pursuant to § 6(j), from the Board's adverse determination of his sincerity. See 368 F.2d at 151.