UNITED STATES of America, Appellee,

v.

Arnold G. SANDBANK, Appellant.

No. 159, Docket 32530.

United States Court of Appeals Second Circuit.

Argued Oct. 31, 1968.

Decided Oct. 31, 1968.

Certiorari Denied April 7, 1969.
See 89 S.Ct. 1301.

Charles P. Sifton, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., Kevin J. McInerney, John R. Robinson, Asst. U. S. Attys., on the brief), for appellee.

Stanley Faulkner, New York City (Faulkner & Schmidt, New York City, on the brief), for appellant.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

PER CURIAM:

Although this case was affirmed in open court, we believe it desirable to state briefly our reasons for that action.

Arnold G. Sandbank appeals from a judgment of conviction after trial before Judge Wyatt, sitting without a jury, for failure to report for induction into the military on July 26, 1967, and for failure to submit to induction on January 3, 1968. He was sentenced to three years on each count, the sentences to run concurrently.

Sandbank contends that he was deprived of his liberty without due process of law because he was not able to contest the denial of his request for a 1–0 deferment as a conscientious objector after his induction notice was issued. A registrant may have his application for conscientious objector status considered by the Local Draft Board even after the induction notice is issued provided he raises his claim promptly after it matures. United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966). The Draft Board must reopen the case only if the registrant has made out a prima facie case, based on objective facts, that he is entitled to be reclassified. United States v. Gearey, 379 F.2d 915, 922 n. 11 (2d Cir. 1967). See United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). The Selective Service regulations require that before the Local Draft Board may reopen the case it must find that there has been a change in status resulting from circumstances over which the registrant has no control, subsequent to issuance of his induction notice. 32 C.F.R. § 1625.2.

Sandbank claims that § 1625.2 does not apply in his case since the induction notice in question was cancelled by officials at the induction center. We believe, however, that there is sufficient evidence to conclude that the order was merely postponed rather than cancelled. Nor has Sandbank shown that his claim

to conscientious objector status matured after the induction notice was issued. United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966). He bases his claim on his parochial school training, and states that he has held his beliefs since the age of seven. Further, although Sandbank has had numerous appeals on various grounds since reaching his eighteenth birthday, when his claim to conscientious objector status could have been fairly heard, he never mentioned these beliefs or his alleged pacifist training until after receipt of the induction order which was approximately three years later. In sum, Sandbank has failed to make a prima facie case demonstrating that he is entitled to reclassification.

■■■ Sandbank also asserts that the court below should have directed a judgment of acquittal by reason of the government's failure to show as part of its case in chief that he was called up for military duty in the proper order. He contends, relying on United States v. Lybrand, 279 F.Supp. 74 (E.D.N.Y.1967), that such affirmative proof is an essential element of the government's case. We believe there was adequate evidence to support Judge Wyatt's finding that Sandbank was called in proper order. Moreover, we do not agree with the District Court's conclusion in *Lybrand*.* We are of the view that the better rule is to require the registrant to show that the call up was invalid as part of his defense with the right to the government to rebut such evidence. Lowe v. United States, 389 F.2d 51 (5th Cir. 1968); Greer v. United States, 378 F.2d 931 (5th Cir. 1967).

Affirmed.

---

* The district judge decided in *Lybrand* that the government was required to prove as part of its direct case that the call-up of the registrant was not out of turn, but in regular order. This holding conflicts with the well-established presumption of regularity that attaches to official proceedings and places an unnecessary additional burden on the government. United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926); Ross v. Stewart, 227 U.S. 530, 535, 33 S.Ct. 345, 57 L.Ed. 626 (1913); K. Davis, Administrative Law Treatise § 11.06 (1958). While we are fully cognizant that this is a criminal case and accordingly we hesitate to presume a vital element of the proof, applying the presumption here results merely in permitting the government to present its case in chief free of a technical nicety. The defense may easily put this detail in issue. Assuming *arguendo* that proof of an improper call-up order would constitute a valid defense, we merely decide that the government need not take the initiative in raising the issue. An analogy may be drawn to a defense of insanity; although it is an essential element of criminality that the perpetrator must have acted with a sane mind, the government need not establish sanity as part of its case in chief in every prosecution.

Moreover, we note that even if the court had properly concluded that the government was required to establish as part of its case that Lybrand was called in regular order, the better practice would have been to reopen the case for this easily supplied and technical proof rather than to grant a motion for a judgment of acquittal. But the judge denied the United States Attorney's request to reopen the case. He grounded his ruling on the fact that the government had been given notice by the defense that it would press the issue. But this was a relatively novel question; only one unreported district court case had previously imposed this duty on the prosecution. United States v. Franklin Howard Rhodes, Crim. No. 41,112 (N.D. Cal.). Thus, if the government did introduce evidence relating to the order of call as part of its case in chief, it would have been put in the quandary of conceding the validity of *Rhodes* for this and all future prosecutions. Because precedent was so heavily in its favor, the government could reasonably have expected that a determination on the law would be made in a way that would not oblige it to make a "do or die" choice before the legal question was resolved as to the manner in which it would present its case. Directing a verdict of acquittal here completely foreclosed any remedial proof. Furthermore, since *Lybrand* was a non-jury case, the additional evidence could have been supplied without undue inconvenience to the court.