**Ardith Alvin DAVIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19329.**

United States Court of Appeals Eighth Circuit.

April 30, 1969.

Dan Johnston, of Jesse, Le Tourneau & Johnston, Des Moines, Iowa, for appellant; Lawrence Le Tourneau, Des Moines, Iowa, on brief.

James P. Rielly, U. S. Atty., Des Moines, Iowa, for appellee; Jerry E. Williams and Claude H. Freeman, Asst. U. S. Attys., Des Moines, Iowa, with him on brief.

Before VAN OOSTERHOUT, Chief Judge and MATTHES and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Ardith Alvin Davis, who claims to be a conscientious objector to military service, appeals from his conviction for willfully refusing induction into the armed forces. The incident which gave rise to the prosecution occurred on November 8, 1967, at Des Moines, Iowa. This appeal deals with Davis' basic claim that the induction order was illegal and void because the local Selective Service board improperly refused to reopen his I–A draft classification.

The trial court's opinion is reported at 284 F.Supp. 93 and the facts, there stated in detail, shall be repeated only in so far as necessary. We believe that the trial court misapplied the appropriate Selective Service regulation to the undisputed facts. We reverse the conviction.

Davis, who had registered for the draft with a local board in Oklahoma City, Oklahoma, had been deferred as a student, both undergraduate and graduate, until the events of 1966–1967 which climaxed with his refusal to be inducted into the armed forces. In the fall of 1966, Davis accepted a full-time position as a sociology instructor at the Muscatine (Iowa) Community College. During the latter part of that year, Davis, with the support of the college, sought an occupational deferment (II–A) but, in January of 1967, this request was refused. Davis then elected to take an appeal to the Iowa Selective Service Appeal Board, which on issues relating to occupational deferment had concurrent jurisdiction with the Oklahoma Appeal Board. 32 C.F.R. 1626.11(b). The Iowa Appeal Board classified Davis II–A signifying that he was deferred because of his civilian occupation. This classifica-

tion was to continue until mid-June.[1] During the first week of June, the local board reclassified Davis I–A. Davis immediately appealed on the basis that his teaching services were urgently needed at the college. The Oklahoma Appeal Board unanimously denied this claim on June 26, 1967. Thereafter, Davis sought a classification as a "conscientious objector to war and militarism" and, by letter dated August 8, he requested that his local board immediately send him Selective Service Form 150, the special form to be used by persons claiming to be conscientious objectors. 32 C.F.R. 1621.-11. This request crossed in the mail an induction order dated August 9, which directed him to report for processing into the armed services on August 31. The Oklahoma local board delayed mailing to Davis the requested form and notified him that he should re-submit his request and indicate whether it was based on "religious or pacifist" reasons. Davis renewed his request on August 15, writing:

"By reason of my religious beliefs I wish to apply for classification as a conscientious objector to war and militarism, and therefore request that Form 150 be sent to me immediately.

As a Christian I cannot in good conscience join any organization which is designed to achieve its objectives by means of killing, violence and destruction.

If the Board so desires, I will make every effort to appear for a personal interview."

The next day, Davis completed the appropriate form which he had obtained from the Muscatine, Iowa, local draft board and he forwarded this form to his own local board with a request that his current induction order be cancelled and his classification reopened. Hearing nothing immediately from the local board, he wrote the Oklahoma State Selective Service Director on August 25 and requested that the director intercede, cancel the induction order and reopen his classification so that his claim to conscientious objector status could be considered. Colonel Hope, the Oklahoma State Selective Service Director, responded to that letter and notified the local board that he was appealing Davis' classification.[2] Complying with Hope's instructions, the local board informed Davis on August 29 that an appeal had been taken, that his order to report for induction *was cancelled* and that his file was now with the Oklahoma State Appeal Board.[3] On September 1, Davis wrote his local board, with a copy to the state director, and contended:

"If my file goes to the State Appeal Board I will be deprived of my right to a personal appearance before my Local Board in connection with my CO claim. I therefore request that my file not be sent to the State Appeal Board, but rather that my request for reclassification to I–O be acted upon by my Local Board in the normal way."

Colonel Hope, in response to this objection, arranged for the return of Davis' file to the local board. By letter of September 6, he instructed the local board that they "may consider all the evidence submitted by the registrant and other parties concerning his claim for conscientious objection, and a decision reached as to whether or not, in your opinion, his classification should be reopened and considered anew". He further requested that, if the board did not reopen Davis' classification, the file should be returned to him so that he could institute an appeal on Davis' behalf. The next day, September 7, the local board considered Davis' claim for conscientious objector status and refused to reopen his I–A

---

1. Unless otherwise indicated, all further events occurred in 1967.

2. The regulations permit the state director to appeal at any time from any determination of a local board within the state. 32 C.F.R. 1626.1.

3. Davis' Selective Service file likewise indicates that the induction order of August 9 had been cancelled.

classification. The board minutes recited:

"Rec'd letter from State Director to be considered also at the Local Board meeting. Local Board considered completed SSS 150 and new information submitted and contents of the registrant's cover sheet. It was the decision of the local board that the registrant's classification not be re-opened."

After notification of the board's rejection of his claim, Davis, on September 13, requested an opportunity to personally appear before the members of the local board. His request went unacknowledged. On September 14, Colonel Hope appealed the local board's action on Davis' behalf. The appeal was unsuccessful and the local board issued a new induction order on September 26. Davis received approval of his request to transfer the place of induction to Iowa and, under the transfer order, his reporting date was set for November 7. Following processing at the induction station, Davis refused induction. This prosecution followed.

In this case, appellant's claim of error rests on the narrow ground that the induction order which he refused to obey had been illegally issued because he was not afforded the opportunity to personally appear before his local Selective Service board. We examine the applicable regulation:

"32 C.F.R. § 1625.2 When registrant's classification may be reopened and considered anew.

The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classifica-

tion; provided, in either event, *the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.*" (Emphasis added.)

The trial court, applying that portion of § 1625.2 emphasized above, held that the August 9 induction order limited the local board's consideration of Davis' claim and stated:

"The denial of a reopening by the Local Board was in itself a finding that defendant lacked the prescribed change in status due to 'circumstances over which the registrant had no control'." 284 F.Supp at 97.

 We disagree. The August 9 induction order had been cancelled. Colonel Hope instructed the local board to consider all the evidence relating to Davis' conscientious objector claim. Such evidence included Selective Service Form 150 and numerous letters from Davis' associates attesting to his sincerity. The action of the draft board in cancelling the induction order, together with the instructions given the local board by the state director, placed Davis in the same situation as he would be if no draft order had ever been issued. Miller v. United States, 388 F.2d 973, 975 (9th Cir. 1967). The clause of § 1625.2 limiting the power of the board to reopen when there is an outstanding induction order is inapplicable in the present case.

Cases relied upon by the government to support the local board's denial of a reopening, such as Davis v. United States, 374 F.2d 1 (5th Cir. 1967); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966), cert. denied, Lawrence v. United States, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966); Keene v. United States, 266 F.2d 378 (10th Cir. 1959), are distinguishable. In each of these cases,

the board considered the registrant's claim for a conscientious objector status in the presence of an outstanding order to report for induction. See also, United States v. Jennison, 402 F.2d 51 (6th Cir. 1968); Du Vernay v. United States, 394 F.2d 979, 981 (5th Cir. 1968), aff'd without opinion by equally divided Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969).

■ Some of the cases relied on by the government, such as United States v. Al-Majied Muhammad, *supra*, deal with a postponement of an induction order pending preliminary consideration of the registrant's claim. There is a significant difference between a cancelled induction order and one that is postponed. See generally, United States v. Sandbank, 403 F.2d 38 (2d Cir. 1968). The regulations specify that a postponement does not invalidate an induction order but rather operates only to defer the reporting date. When there has been a postponement, the registrant is required to report without being issued a new order. 32 C.F.R. 1632.2. When there has been a cancellation, the registrant is not required to report unless a new and subsequent order is issued. He stands in the same position as he would if no induction order had ever been issued. Generally, the board's authority to reconsider a registrant's classification is limited after the issuance of an induction order. See, Palmer v. United States, 401 F.2d 226 (9th Cir. 1968). However, when the induction order is cancelled prior to the time the board reconsiders a registrant's case, it would seem that the board's authority to completely reconsider a classification is restored. Colonel Hope's letter directed the local board to consider all of the evidence submitted by Davis. The fact that the induction order had been cancelled and the fact that the local board then generally considered Davis' request, as reflected by the minutes of the board, compel the conclusion that the board did not deem itself limited to the consideration of whether Davis' circumstances had changed since the issuance of the August 9 induction order.

■ With regard to the use of permissive language in § 1625.2 specifying that the board "may reopen", this Court recently said in an opinion authored by Judge Matthes:

"The courts have held that the language of § 1625.2 is not unqualifiedly permissive and that the local board cannot act with complete discretion and arbitrariness. If the evidence submitted is sufficient to establish a prima facie case of the registrant's claim, then the board must reopen and determine whether registrant is entitled to the requested classification. Stain v. United States, 235 F.2d 339 (9th Cir. 1956); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Vincelli, 215 F.2d 210 (2d Cir. 1954)." Vaughn v. United States, 404 F.2d 586 at 590 (8th Cir. 1968).

■ Davis had requested, both before and after the meeting of September 7, that he be granted a personal appearance before the local board. This right was denied him. Unless a request is made within thirty days of a reclassification, a registrant obtains a right of personal appearance before his local board only if the board reopens his classification, even though after the reopening the board retains the registrant in his original classification. The reopening gives the registrant the same right of personal appearance and the same right of appeal as he would have from a reclassification. 32 C.F.R. 1625.11–.12–.13. However, if the local board refuses to reopen the registrant's case, it is deemed closed although he is entitled to notification of this action. 32 C.F.R. 1625.4. Though reopening was denied here, Davis was afforded an appeal to an appellate board through the broad powers granted the state director which permit him to appeal on behalf of the registrant at any time. 32 C.F.R. 1626.1. However, he had no opportunity to personally present his case to the local board. From a practical standpoint, the right to personally consult with the members of the board was crucial to presentation of Da-

vis' claim. A person sincerely claiming to be a conscientious objector whose belief has matured subsequent to an original classification, is most likely to have his sincerity placed in question by the local board. Undoubtedly, where a registrant presents a claim for conscientious objector status when his induction 'is imminent and when he has already been deferred for other reasons, the board is likely to view his claim and motives with considerable suspicion. Yet moral and religious values are subject to change, particularly as a young man reaches and enters maturity. There is little likelihood that such a person can be afforded a fair hearing without being allowed to personally present his claim. The dilemma of a true conscientious objector facing either induction or a possible criminal prosecution has been graphically demonstrated by Judge Kiley's excellent opinion in United States v. Freeman, 388 F.2d 246, 248–249 (7th Cir. 1967):

> "A sincere claimant for conscientious objector status cannot turn to the habeas corpus remedy because his religious belief prevents him from accepting induction under any circumstances. As a result he is limited to seeking review in a criminal trial for refusal to submit. In this criminal proceeding, as in any proceeding reviewing a draft classification, his defense of invalid classification is tested by the 'basis in fact' formula. Under these circumstances conviction is almost inevitable, since the Board's refusal to grant the conscientious objector classification is based on an inference as to the sincerity of the registrant's belief and there will al-

most always be something in the record to support an inference of lack of sincerity."

Under existing law, the only administrative forum in which the conscientious objector may personally assert the sincerity of his beliefs is his local draft board. See, 50 U.S.C.App. § 456 (j); 32 C.F.R. §§ 1624.1, 1624.2 and 1625.13. The opportunity once afforded conscientious objector claimants to present their positions to Justice Department hearing officers, who would judge sincerity on the basis of personal confrontation and a specially-conducted' investigation, was eliminated in 1967. 50 U.S.C.App. § 456(j), as amended by P.L. 90–40, § 1(7), 81 Stat. 104 (1967). See, United States v. Nugent, 346 U.S. 1, 8, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). For a general review and comparison of procedures relating to processing of conscientious objector claims under the military conscription laws from 1940 to the present, see Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 U.Chi.L.Rev. 686 (1968).

The regulations, as interpreted by the courts, do afford some protection to those claiming to be conscientious objectors. The local board is required to reopen if the registrant can make out a prima facie case for such a classification. Davis' statements, taken from his Selective Service Form 150 reproduced in part in the margin, if taken as true, demonstrate that he is conscientiously opposed to war in any form and that his objection is based on religious training and belief.[4] Accompanying his conscientious

---

4. "2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.
 \* \* \* \* \*
 Jesus taught an ethic of love—i. e., the character of one's relationship to God and to others should be that of love, compassion, concern, involvement. Love is more than the absence of hate; love is active,

and involves man in efforts to consciously change society and individuals into what may ultimately be called the 'Kingdom of God.'
 Jesus didn't use or condone militarism as a means of accomplishing God's purposes on earth. He spoke to men's hearts and minds with the apparent understanding that the most fundamental way to accomplish God's purposes on earth is through changing men's attitudes, commit-

objector Form 150 was a letter from his pastor which, in part, read:

" * * *

I feel quite well acquainted with Mr. Davis's beliefs. I knew him as they were developing in College. I have discussed those religious beliefs which occasion his objection to war at least a dozen times in the last two years.

His beliefs, as I know them are quite orthodox. He believes in what the civil authorities call a 'Supreme Being', and whom the Christian Church calls 'One God, the Father Almighty, Maker of heaven and earth * * *.' He believes that God is manifested uniquely in Jesus, and in his preaching, healing, death and resurrection. When Mr. Davis recites the great Christian Creeds with the Church, I am sure he does so sincerely.

* * * * * *

In brief, my acquaintance with Mr. Davis and his beliefs gives me every reason to think that they are thoroughly religious, that they constitute his real religion, and require him to disavow even non-combatant participation in the armed forces.

I am convinced that Mr. Davis is sincere. He is a committed Christian,

and a man of intense personal integrity."

These statements, if accepted at face value, constitute a prima facie case for the conscientious objector classification as specified in 50 U.S.C.App. § 456 (j). The local board was therefore required to reopen his classification. 32 C.F.R. 1625.2; Robertson v. United States, 404 F.2d 1141 (5th Cir. 1969); United States v. Freeman, *supra*; Miller v. United States, *supra*; Stain v. United States, 235 F.2d 339 (9th Cir. 1956); United States v. Ransom, 223 F.2d 15 (7th Cir. 1955); United States v. Vincelli, 215 F.2d 210 (2d Cir. 1954), petition for rehearing denied per curiam, 216 F.2d 681 (2d Cir. 1954). See also, Vaughn v. United States, *supra*. Without reopening, the board improperly considered the issue of Davis' sincerity. This board might later determine the issue on the merits against Davis, but, in so doing, it must have afforded him the opportunity to personally discuss his claim.

The Fifth Circuit, in Robertson v. United States, *supra*, 404 F.2d at 1146, noted:

"Whether or not a registrant is ultimately reclassified, the decision by the local board to reopen or not to reopen his classification is a separate

---

ments, desires, instead of imposing a view upon them by means of violent force.

On the basis of my religious beliefs I strongly and sincerely believe that as a Christian I cannot participate in the armed forces of any country. An oath to submit to the authority of a military organization would be inconsistent with my obligations to God. Service to God demands a different kind of 'soldierhood' than does that which is demanded by the present national military bureaucracies.

In summary, my belief in 'God the Father Almighty, Maker of heaven and earth, and in Jesus Christ, the only-begotten Son of God,' involves duties which to me are superior to those arising from any human relation.

3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

The beliefs expressed above are the product of varying degrees of participation in the Church since childhood, interaction with Christians and non-Christians, the reading of religious literature (biblical, historical, theological, homiletical), and thinking and praying about the Christian's obligations in the modern world.

5. Under what circumstances, if any, do you believe in the use of force?

* * * * *

Since military organizations are designed to achieve ends by means of violent force (e. g., killing and destruction), I am compelled as a Christian to abstain from participation in any military organization. I believe that even as a soldier who was 'under orders' to kill or abuse another person I would still be personally responsible to God for my actions."

determination of independent procedural significance * * * [and] the Regulations do not permit the Board to evaluate a request for reclassification on its merits until it first determines whether the information submitted by the registrant requires reopening."

The procedure followed by the board in this case deprived Davis of a basic and fundamental procedural right of constitutional significance: the right to personally appear before the decision-making body to demonstrate the depth and quality of his beliefs to afford that body the opportunity to judge and test his sincerity on a man-to-man basis.

Since Davis was denied the right to personally appear before his local board, the induction order was improper. The trial court erred in failing to grant appellant's motion for acquittal and the conviction is, therefore, set aside.

Reversed.