John J. PASZEL, Petitioner-Appellee,

v.

Melvin R. LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, and Commanding Officer, Armed Forces Examining and Entrance Station, Fort Hamilton, Brooklyn, New York, Respondents-Appellants.

No. 351, Docket 34052.

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1970.

Decided April 8, 1970.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., of counsel), for respondents-appellants.

Frederick B. Boyden, New York City, for petitioner-appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

This is an appeal by the Secretary of Defense and other respondents from the issuance of a writ of habeas corpus to an inductee who had advanced a claim that conscientious objection had crystallized after receipt of a notice to report for induction.

Petitioner Paszel, who was born on August 16, 1943, registered in 1961, and completed his classification questionnaire on March 2, 1963, has had an elaborate classification history, with 137 documents in his Selective Service file. He was initially classified II–S and retained this until graduation from college in the summer of 1965. He then requested a II–A classification because of enlistment with the Peace Corps; he received and, with an exception not here material, retained this through April 1968, during which period he served in Nigeria as a teacher. His request for a year's extension was denied by the Local Board, which classified him as I–A. The Appeal Board reclassified him as II–A, but the State Director appealed to the Presidential Appeal Board which restored the I–A classification on September 10, 1968. On October 11, the Local Board directed Paszel to report for induction on November 4. Shortly thereafter it received letters from Paszel and from a Philadelphia school district advising that Paszel had been hired as a teacher in a slum school and requesting an occupational deferment until June 30, 1969. On October 25 the Board postponed induction pending a determination of this request. Later it declined to reopen the I–A classification and, on November 8, 1968, issued an order requiring Paszel to report for induction on December 3.

On November 12 Paszel wrote the Local Board:

I am a conscientious objector. Please send to me a Form 150.

The Board complied and again postponed the induction date, and Paszel filed the form. He asserted that his religious beliefs and training against participation in war originated from his Catholic background and training, developed and blossomed during his college years including a semester's enrollment in the R.O.T.C. which he had left because "it presented a mode of life and thought" he "found difficult to accept," and began to come into focus during his two years in war torn Nigeria and as a result of certain reading which he summarized. He explained his belated assertion of conscientious objection on the bases that he had thought he had 30 days to appeal after his new classification by the Presidential Appeal Board; that when he received an induction order within the 30 day period, he thought it might have been a procedural error;[1] that he "therefore" applied for a deferment on the basis of the Philadelphia teaching position; that the second induction order and its implication that "the reality of entrance into the armed forces could not longer be considered a remote possibility" forced him "to think about everything that had gone on before"; and that "It was at this point that my views crystallized and I realized that I was indeed a conscientious objector." The form was accompanied by nine letters from high school and college teachers and acquaintances. These attested Paszel's character, sincerity, and devotion to his less fortunate fellow-men, but said nothing about the date when his conscientious objection matured. The Board granted Paszel a brief interview on December 16, 1969, but declined to reopen his classification.

1. The meaning of all this is far from clear to us. In fact the Local Board did wait more than 30 days and Paszel then had nothing about which to appeal.

The Board recorded its action on a Selective Service Form the defective wording of which, we think, may have given rise to much of the difficulty in this case. The pertinent portion read:

> Complete the following if applicable. If either of the following is checked, the opinion of the local board should be recorded on the Minutes of the Local Board Meeting (SSS Form 112).
>
> ( ) It is the local board's opinion that the registrant is not a genuine conscientious objector and that his beliefs are no different now than they were prior to the issuance of his order to report for induction.
>
> ( ) It is the opinion of the local board that the registrant's beliefs matured after the issuance of his order to report for induction. (If such is the case, the local board is required to reopen the registrant's classification.)

The Board checked the first item; the file presented to us does not contain any minutes of the Board's meeting. Paszel was ordered to report for induction on January 7, 1969. This was postponed again when he notified the Board of his intention to appeal the refusal to reopen and to join this with an appeal already taken from the order denying a II–A classification based on his Philadelphia teaching post. The Board refused to process these appeals, since they were taken after issuance of an induction order. After the State Director, on the request of Paszel's attorney, had reviewed the record and concluded that the Board was not required to reopen the I–A classification, Paszel was ordered to report for induction on February 6, 1969. He did and, upon being inducted, immediately filed a petition for habeas corpus in the District Court for the Eastern District of New York. On May 26, 1969, Judge Bartels filed an opinion granting the writ and directing a further hearing by the Local Board on Paszel's conscientious objection claim.

I.

■ The applicable regulation, 32 C.F.R. § 1625.2, prescribes:

> The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant has no control.

Reopening has important consequences. It rescinds the outstanding classification and entitles the registrant to be classified anew. 32 C.F.R. § 1625.11. When the new classification is issued, the registrant has the same rights to personal appearance [2] and appeal as upon his initial classification. 32 C.F.R. § 1625.-13. If the board refuses to reopen, neither of these rights is accorded. "The

---

2. At the personal appearance, which takes place after classification, the registrant may ask the board to reconsider its decision. He may direct attention to information in his file that the board may have overlooked and may present further information that he believes will assist the board in determining his proper classification. 32 C.F.R. §§ 1624.1 and .2.

evil of a contrary rule is obvious; if there were an appeal from every refusal to change a classification, a registrant could interminably delay his induction by successive requests and appeals," United States ex rel. La Charity v. Commanding Officer, 142 F.2d 381, 382 (2 Cir., 1944).[3]

In United States v. Gearey I, 368 F.2d 144 (2 Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), we dealt with the question whether a local board must consider a reopening request based on a recently matured conscientious objection when, as in the present case, the request was not made and the belief allegedly not formed until after notice of induction. We answered in the affirmative because, under the proviso to § 1625.2,

> [i]f the Board finds * * * that the applicant's beliefs ripened only after he received his notice, and that his beliefs qualify him for classification as a conscientious objector then a change in status would have occurred "resulting from circumstances over which the registrant had no control," * * *.

*Id.* at 150. Two propositions are implicit in that decision: the ascension to conscientious objection is a change in status, and the point in time when a registrant's beliefs form is a circumstance beyond his control. The first seems unassailable and the second, long the subject of debate among psychologists and philosophers, is now the law of this circuit. While *Gearey I* thus decided that the board must consider an appropriate request to reopen, only in United States v. Gearey II, 379 F.2d 915 (1967), did we directly face the question what the board must find to justify a refusal to grant the request.[4] Stating that

the rule announced in *Gearey I* insures that boards will reach the "merits" of conscientious objector claims made after notice of induction, we held that a board is not required to reopen if it finds that the registrant is not sincere and if that finding is supported by a basis in fact. 379 F.2d at 920.

It is difficult to see anything in these decisions to support the proposition that if the registrant simply makes out a *prima facie* case for reopening, the board is required to grant his request and proceed to the merits of his conscientious objector claim, with consequent rights of personal appearance and appeal. However, Judge Bartels, citing a footnote in *Gearey II*, 379 F.2d at 922 n. 11, and other cases in this circuit holding that a recently crystallized conscientious objection may be a qualifying change, United States v. Stafford, 389 F.2d 215 (2 Cir. 1968); United States v. Sandbank, 403 F.2d 38 (2 Cir. 1968) (per curiam), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969); see also United States v. Delfin, 419 F.2d 226 (1969), here concluded that "[w]hen the newly presented facts are not frivolous and present a *prima facie* case for a requested classification," the board must reopen. He held that Paszel had "made a showing which is barely sufficient to require the Board to reopen his case and afford him a hearing and the opportunity to appeal upon denial of his [conscientious objector] claim," and therefore issued the writ and directed a hearing on the validity of the claim.

We think this not only misconstrues *Gearey I & II*, but fails to recognize the difference between the duty of a local board when proceeding under the final proviso of 32 C.F.R. § 1625.2, here ap-

---

3. This reasoning is equally applicable to personal appearance since appearance before the board, like appeal from a local board classification, stays induction. 32 C.F.R. § 1624.3.

4. In *Gearey I* we remanded to the district court for a determination whether the board had in fact considered the reopening request because

the Board's finding that Gearey was not "a genuine c.o." * * * might * * * have meant that the Board was refusing to reopen on the ground that Gearey had not advanced his claim before the mailing of the induction notice, even though the claim had not matured until later.

plicable, and the more general provision preceding it, a difference Judge Bartels had perceptively recognized in United States v. Ruppell, 278 F.Supp. 287 (E.D. N.Y.1968).[5] The apparent source of the confusion can be traced to United States v. Sandbank, *supra*, decided by this court after *Ruppell*. Although *Sandbank* was affirmed in open court, a short *per curiam* was issued to explain the basis for affirmance. In the course of that opinion, which sought to follow *Gearey I & II*, we said:

> A registrant may have his application for conscientious objector status considered by the Local Draft Board even after the induction notice is issued provided he raises his claim promptly after it matures. United States v. Gearey, 368 F.2d 144, 150 (2d Cir. 1966). The Draft Board must reopen the case only if the registrant has made out a prima facie case based on objective facts that he is entitled to be reclassified. United States v. Gearey, 379 F.2d 915, 922 n. 11 (2d Cir. 1967).

403 F.2d at 39. While the second sentence can be read and was doubtless intended merely to set down a minimum standard, that is, the registrant must *at least* make out a *prima facie* case before the board is bound to reopen, it can be understood as it here was by the district court to mean that a *prima facie* showing *requires* reopening. Examination of § 1625.2 discloses why this cannot be so.

When the request for reopening is proffered before the mailing of the induction notice, 32 C.F.R. § 1625.2 informs the board that it "may" reopen if the application alleges facts, which, if true, would warrant reclassification.[6] And it has been held that the board must reopen

when such allegations are uncontradicted by other information in the registrant's file. United States v. Burlich, 257 F.Supp. 906 (S.D.N.Y.1966) (Weinfeld, J.); see United States v. Vincelli, 215 F.2d 210, rehearing denied, 216 F.2d 681 (2 Cir. 1954). In the *Gearey II* footnote cited in *Sandbank* and by the court below, *Burlich* and *Vincelli* were distinguished on the ground that in those cases "the request for reclassification was made *before* the registrant had been sent an induction notice." 379 F.2d at 922 n. 11 (emphasis in original). The basis for this distinction is apparent. Unlike the general provision in § 1625.2 relating to pre-notice requests, which speaks only in terms of what the registrant must allege, the proviso dealing with requests made after the mailing of the induction notice instructs the board that it "shall not" reopen unless it "first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." One essential difference therefore is that in pre-notice cases findings are made after reopening while in post-notice cases the proviso requires a specific finding to be made at the threshold. As we noted in United States v. Delfin, *supra*, 419 F.2d at 228, the obvious reason for drawing this line is that "to allow Selective Service registrants to delay presentation of ripe claims for deferments until they have received induction orders would seriously disrupt the orderly administration of the Selective Service System."

One thing thus seems clear. Section 1625.2 cannot be read as mandating reopening when there has been only a *prima facie* showing in the case

---

5. As have other courts of appeals that have considered the matter. See United States v. Mulloy, 412 F.2d 421 (6 Cir. 1969), cert. granted, 396 U.S. 1036, 90 S.Ct. 680, 24 L.Ed.2d 680 (1970); United States v. Buckner, 415 F.2d 1175 10 Cir. 1969); Davis v. United States, 410 F.2d 89, 92–93 (8 Cir. 1969).

6. The converse of this rule is stated in 32 C.F.R. § 1625.4:

[If the board] is of the opinion that the information accompanying [the reopening] request fails to present any facts in addition to those considered when the registrant was classified, or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification.

of requests made after notice of induction, since to do so would ignore the proviso's express requirement that the board make a specific finding that the registrant's status has changed. When the alleged change in status is a recently crystallized conscientious objection, there are but four possible combinations of findings: (1) conscientious objection both before and after notice of induction; (2) no conscientious objection either before or after; (3) conscientious objection before but not after;[7] and (4) no conscientious objection before but conscientious objection after. Of these only the fourth would permit the board to reopen. In *Gearey II* the board's permissible finding that the registrant was not a genuine conscientious objector placed him within the second category and since this does not trigger reopening, the board's denial of the registrant's request was upheld. While this reasoning rests on the view that the requisite change in status is not merely a change in beliefs but a change in beliefs entitling the registrant to conscientious objector status, such a view is implicit—perhaps more accurately, explicit, see 379 F.2d at 920—in the *Gearey* decisions.

■■■ We recognize this means that, where the alleged change in status is a newly crystallized conscientious objection, a decision to reopen will necessarily lead to a decision to reclassify in the absence of new evidence reflecting adversely on the claim and, conversely, that a decision not to reopen will mean that a registrant will not have the right to a personal appearance or appeal and will be left only with judicial review of the refusal to reopen, in accordance with the

narrow scope generally prevailing in selective service cases. But the alternative —that a *prima facie* showing requires reopening at this late stage even though the board is permissibly unconvinced of a change in status resulting from circumstances beyond the registrant's control—is even less attractive, particularly in light of the subjective nature of conscientious objector claims and the ease with which a *prima facie* case can be articulated. See Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). In any event we crossed this bridge in *Gearey II*. Any contrary implications that would flow from an expansive reading of the statement in *Sandbank,* quoted above, are therefore unwarranted.

## II.

While these considerations demonstrate that, for wholly understandable reasons, the district court erred in its approach to Paszel's claim, it does not follow that all relief should be denied. The board's checkmark on the form placed Paszel in the second of the four categories mentioned above. As noted earlier, the form is defective because it omits the first category—conscientious objection both before and after notice.[8] Had the board made this finding, there would have been a basis in fact for it, since the board could have thought the elaborate exposition of Paszel's beliefs in Part 1 of his Form 150, especially the references to his reading, his college ROTC experience, and the war in Nigeria, were inconsistent with any sudden crystallization after mailing of the induction notice. While we appreciate

7. This situation is somewhat unreal. If the board finds that the registrant was not a conscientious objector after notice, it could assume his allegations regarding lack of conscientious objection before that time were true. Thus there would be no need even to reach the question what his beliefs were before notice.

8. Similar difficulties for the future would be lessened if the two items in the form were changed to three, the first saying "it is the local board's opinion that the

registrant is not a genuine conscientious objector," and explaining why; the second "It is the local board's opinion that while the registrant may be a genuine conscientious objector, such objection matured prior to the issuance of his order to report for induction," again explaining why; and the third, "It is the local board's opinion that the registrant is a genuine conscientious objector and that such objection matured after the issuance of his order to report for induction."

that, as suggested in the able brief of Paszel's attorney, such a view confronts a registrant with the risk that the more deeply he articulates the basis for his conscientious objection, the more he may impair his claim to recent crystallization, we see no escape from this.

But the board did not find that Paszel was a conscientious objector both before and after notice. By checking the first box it reached precisely the opposite conclusion and it is difficult to perceive any basis for this. About the only one would be the long delay in the assertion of his conscientious objection until his attempts to secure occupational deferments, particularly in the Philadelphia teaching post, had failed. While this is a factor casting doubt on the genuineness of conscientious objection, United States v. Corliss (Heise), 280 F.2d 808, 812 (2 Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); United States v. Jakobson, 325 F.2d 409, 412 (2 Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), we have said that "it would be improper to conclude that an individual is not a conscientious objector merely because his beliefs did not ripen until after he received his notice." United States v. Gearey I, 368 F.2d at 149–150. Moreover, and even more important, it is entirely possible that the local board's action was founded on a belief, mistaken in the light of United States v. Seeger, *supra,* that the nature of Paszel's beliefs, even though sincerely

held, did not qualify under 50 U.S.C. App. § 456(j).

Despite, or perhaps because of, the narrowness of the scope of review of actions of selective service boards, it is important for courts to know the ground upon which the board acted.[9] We recognize that the Selective Service System is not subject to the Administrative Procedure Act with its requirement of reasons for the denial of an application, 5 U.S.C. §§ 551, 555(e), and that boards of volunteer laymen cannot be expected to express themselves with the elaboration of expert regulatory agencies. Still a serious claim like Paszel's deserved something better than an ambiguous checkmark.

Since the court below did not pass on whether the board had a basis in fact for its finding that Paszel was not entitled to a reopening but only that he had presented a *prima facie* case, and since the record does not sufficiently disclose the board's reasons for its finding, these matters should be decided by the district court after a hearing, similar to that which we directed in *Gearey I,* 368 F.2d at 151, in which the board will have an opportunity to explain the grounds for its rejection of Paszel's request to reopen.[10]

The order issuing the writ of habeas corpus is vacated, and the cause remanded for further proceedings by the district court consistent with the opinion. No costs.

9. As Professor Davis has written, Discretionary Justice 104 (1969):
The reasons for findings and opinions are often just as strong, if not stronger, when discretion is exercised without hearings, for findings and opinions tend to protect against careless or hasty action, help assure that the main facts and ideas have been considered, make easier the supervision of the officer by a higher officer, and help parties to decide whether or not to seek administrative or judicial review.

Although findings and reasoned opinions obviously cannot be written in support of all discretionary determinations, they probably should be used much more than they are; the assumption is too general they are suitable only for cases that have gone to hearing.

10. If there were minutes of a Board meeting following Paszel's interview, these should be produced.