UNITED STATES of America, Plaintiff-Appellee,

v.

Stuart Alan WILBUR, Defendant-Appellant.

No. 24704.

United States Court of Appeals, Ninth Circuit.

June 8, 1970.

Rehearing Denied July 20, 1970.

Carol K. Smith (argued), Los Angeles, Cal., for defendant-appellant.

John W. Hornbeck (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Chief, Criminal Division, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, CARTER and KILKENNY, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Wilbur was found guilty by a jury of refusal to submit to induction in the armed forces, 50 U.S.C. App. § 462. He appeals from his conviction raising a number of alleged errors committed by the selective service system and the trial court. Three contentions merit written consideration:

(1) Wilbur was improperly denied a mandatory educational deferment;

(2) Wilbur's local board failed to forward a statement of Wilbur's emotional condition for consideration by the Armed Forces examining center;

(3) The local board refused to grant a requested personal appearance.

Consideration of these contentions will be aided by knowledge of Wilbur's relevant dealings with the Selective Service. Wilbur was at all times a registrant under the jurisdiction of Local Board 117 at Gardena, California. All the notices to him, hereafter referred to, came from Local Board 117. On March 8, 1967 Wilbur was classified I–A after his local board learned that he had not enrolled for the winter quarter at the University of California, Santa Barbara (UCSB). On July 18, 1967, he was ordered to report for a pre-induction physical on August 4, 1967. On July 31, 1967, the Board received a letter from a certified psychologist discussing Wilbur's mental and emotional state. On August 4, 1967 Wilbur was examined and found acceptable for service.

On September 8, 1967 the board received a letter from the UCSB stating that Wilbur had been accepted for readmission for the fall quarter. On November 1, 1967 the board received SSS Form 109–A from UCSB indicating that Wilbur was currently enrolled as a full-time student. The next day the board met and again classified Wilbur I–A. On November 7, 1967 it mailed him a form notifying him of his right to request a personal appearance or appeal within 30 days. On December 4, 1967 defendant turned in his draft card and classification card to a Santa Barbara local board together with the following statement: "Hello! May I request a personal discussion with you in place of a personal appeal for conscientious objector status? * * * Further communication follows." The cards and statements were forwarded to Local Board 117.

On December 7, 1967 Local Board 117 reviewed Wilbur's Student Certificate and declined to reopen his classification. On March 11, 1968, UCSB notified the local board that Wilbur was no longer

enrolled at the University. On March 15, 1968 Wilbur was mailed an induction order for April 8, 1968. He reported, refused to submit to induction, and has been prosecuted for that offense.

## I

### The Denial of a II–S Deferment

 Wilbur's claims for a II–S deferment are governed by 32 CFR 1622.-25(a). In pertinent part that regulation reads "In Class II–S shall be placed any registrant who has requested such deferment * * *" Wilbur's selective service file clearly shows that Wilbur never requested a student deferment. The SSS Form 109–A sent by UCSB to the local board noted "Submission of this form does not constitute a request for deferment." Since the burden of showing entitlement to a deferment was on Wilbur, he can not complain that the local board wrongly denied him a II–S deferment at any time after March 8, 1967.[1]

Wilbur offered proof from the secretary of the board group covering Wilbur's board, that it was the practice of the board to send a Form 104 (Request for Undergraduate Student Deferment) to a registrant upon receipt from his school of a Form 109 (Statement of Full-Time Enrollment). This was not done in Wilbur's case. Wilbur contends this failure to follow board practice requires a reversal of his conviction.

 There is law to the effect that a national administrative agency which promulgates regulations may not ignore the procedures thus established. Smith v. Resor, (2 Cir. 1969) 406 F.2d 141, 145; Hammond v. Lenfest, (2 Cir. 1968) 398 F.2d 705. As stated in *Hammond* "* * * a validly promulgated regulation binds the government as much as the individual subject to the regulation; and, this is no less so because the governmental action is essentially discretionary in nature." (p.

715). These cases, involving regulations promulgated by the Army, relied on Supreme Court cases in the area of loyalty discharges and deportation enunciating the same principle of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Vitarelli v. Seaton, 359 U.S. 535, 79 S. Ct. 968, 3 L.Ed.2d 1012 (1959).

 None of these cases concerns the *practice* of a local unit of an agency. No case has been cited concerning the situation where a local unit has adopted some *practice* not provided for by the regulations. Finally, there is no showing that Wilbur knew of the local practice and relied on it. There is no merit to the contention.

## II

### The Failure to Forward the Statement of Mental and Emotional Condition.

Prior to Wilbur's physical on August 4, 1967 his local board received a letter from Earl V. Pullias, a Certified Psychologist and Professor of Education at the University of Southern California. The letter noted that Mr. Pullias had been seeing Wilbur "for about three months on a counseling basis," and spoke of his "relatively serious pschological problems." This letter was not forwarded to the Armed Forces Entrance and Examining Station with Wilbur's other papers.

Wilbur contends that the board violated 32 CFR 1628.13(a) (3) in failing to forward the Pullias letter. The section provides that the local board shall: "Assemble and attach to the registrant's Record of Induction (DD Form No. 47) any information in the possession of the local board which should be considered in determining whether the registrant is qualified for service in the Armed Forces." Wilbur argues that the absence of the letter prejudiced his chance

---

1. We would note that Wilbur was not drafted out of school. On March 11, 1968 the University notified the board he was no longer enrolled. It was not until March 15, 1968 that he was ordered to report for induction on April 8, 1968.

of being rejected for service on the grounds of a history of psycho-neurotic reaction.

■ We believe that the language of the regulation places some discretion in the local board in determining what information "should be considered" by the examining center. Under the circumstances we do not feel that the failure of the board to send the Pullias letter requires a reversal of Wilbur's conviction. The letter discusses both Wilbur's psychological problems and the sincerity of his conscientious objector beliefs. The board files noted that the letter was sent "re: Reg. claim as c.o." This was no doubt done in view of its contents and in view of the fact that Wilbur had requested a Conscientious Objector form only three days earlier. Pullias signed his letter as a Certified Psychologist and Professor of Education, not as an M.D. Any medical statements were couched in conclusory statements. There was no history of treatment, diagnosis or prognosis. Pullias was not a medical doctor nor did he attempt to clarify his own qualifications for offering an opinion about Wilbur's mental and emotional condition.[2]

### III

*The Failure to Grant Wilbur a Personal Appearance.*

On November 7, 1967, Wilbur received his notice of I–A classification and a notice that he had 30 days to request a personal appearance or a state appeal. On December 4, 1967, he appeared at Santa Barbara Local Board 80 at which time he turned in his draft cards and requested "a personal discussion." This information was not received by Wilbur's local board until well after the 30 day period for appeal had expired. Although his local board granted Wilbur a courtesy appearance to discuss his con-

scientious objector claim, it made clear that this was not an appearance of right under the regulations.

Wilbur correctly states that at the time he received his notice of classification, the selective service form did not specify that a request for personal appearance or appeal had to be made to the classifying board. Wilbur therefore contends that he was entitled to present his claim to any local board in the United States. On the facts of this case we find this argument incredible.

Wilbur knew that Local Board No. 117 was *his* board. The records of Wilbur's local board disclose eleven mailings to Wilbur between June 14, 1966 and November 7, 1967. The records also show at least four occasions on which Wilbur wrote the board for purposes of seeking a classification other than I–A. On no occasion, since his initial classification is there an indication that Wilbur had dealings with a board other than his local board.

■ Wilbur emphasizes that numerous Selective Service System forms, including his classification notice, state: "FOR INFORMATION AND ADVICE, GO TO ANY LOCAL BOARD." He reads this as an invitation to transact business with the board of his choice. We read the language as an invitation to call any local board to clarify questions about Selective Service laws and procedures. Here Wilbur had only to ask the Santa Barbara board where a request for personal appearance should be directed. His failure to do so, reflects on the sincerity of his claim that he made a good faith request for a personal appearance.

Other matters raised by Wilbur, including a challenge to two jury instructions have been considered by the court and found to be without merit.

The judgment is affirmed.

---

2. Wilbur was given a psychiatric examination as part of his August 4, 1967 pre-induction processing. The record of the examining psychiatrist indicates that he was aware of "recent therapy by psychologists."