445 F.2d 560
 John Michael RYAN, Appellant,
v.
Lewis B. HERSHEY, as Director of the Selective Service
System of the UnitedStates; Major General Adams, as Director
of Selective Service System of theState of Missouri; and
Alex J. Arunski, Louis T. Saffa, Robert J. Concanon, andJohn
Sherod,as Members of Selective Service System Local Board
No. 235, Appellees.
 No. 20092.
 United States Court of Appeals, Eighth Circuit.
 June 18, 1971, Rehearing En Banc Denied July 15, 1971,
Rehearing Denied July15, 1971.
 
 Francis L. Ruppert, St. Louis, Mo., for appellant.
 Peter T. Straub, Asst. U.S. Atty., St. Louis, Mo., Daniel Bartlett, Jr., U.S. Atty., for appellees.
 Before VOGEL, Senior Circuit Judge, HEANEY and BRIGHT, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 John Michael Ryan appeals from a decision of the United States District Court for the Eastern District of Missouri dismissing his complaint for pre-induction relief, 308 F.Supp. 285. Ryan contended below that his local draft board was improperly constituted and thus without authority to order his induction, that he was entitled to a III-A classification because his wife became pregnant before he was inducted, and that he was entitled to be classified as a conscientious objector. The trial court held that Ryan, as a registrant, lacked standing to question the composition of the board and that, under 50 U.S.C.A. App. 460(b)(3), the court had no jurisdiction to review Ryan's other contentions. We affirm the judgment of the District Court.
 
 
 2
 A brief statement of facts is necessary to an understanding of the issues:
 
 
 3
 Ryan, a resident of St. Louis County, Missouri, registered with his local board on September 14, 1961. He was deferred several times for reasons not germane to this appeal. As of December 10, 1968, he was classified III-A (hardship). On March 4, 1969, he was reclassified I-A. On May 6, he was granted a personal appearance to contest his reclassification. The board voted two-to-one to continue Ryan's I-A classification. Ryan appealed to the State Appeals Board, which classified him I-A.
 
 
 4
 On June 27, Ryan notified his board that he was married.
 
 
 5
 On June 30, the board ordered Ryan to report for induction on July 14. Ryan then obtained forms for requesting conscientious objector status, which he completed and returned to his board on July 8. On July 9, the board clerk informed Ryan that his induction was postponed until further notice.
 
 
 6
 On September 12, Ryan requested a III-A classification on the grounds that his wife was pregnant. This request was accompanied by the appropriate doctor's certificate attesting to his wife's pregnancy. On October 22, Ryan was ordered to report for induction on November 7. He filed this action on October 31, 1969.
 
 
 7
 Ryan subsequently received a letter, dated November 5, stating that the board had reviewed his file and had found no justifiable cause to reopen his classification. On November 6, Ryan's induction was again postponed, until December 7.
 
 
 8
 On November 10, Ryan wrote to his board seeking a personal appearance to explain his position as a conscientious objector. He again requested a III-A deferment on the basis of his wife's pregnancy, and asked to be permitted to appear before a legally constituted board. This letter had not been answered as of the date of the District Court hearing.
 
 
 9
 Ryan's petition was heard on December 5, 1969.
 
 THE COMPOSITION OF THE LOCAL DRAFT BOARD
 
 10
 The undisputed evidence establishes that Ryan's board was improperly constituted. One member was not a resident of St. Louis County,[1] having moved to another county after his appointment. Another member resided within St. Louis County but outside of the area in which the board had jurisdiction.[2] The presence of both members was necessary to establish the quorum of three that ruled on Ryan's various requests.
 
 
 11
 Notwithstanding the fact that one or more of the board members may not have met statutory and regulatory membership criteria, each of the members held his office under color of authority derived from appointment, however irregular, and discharged his duties on behalf of the public. Thus, his qualifications to act were not subject to attack by Ryan in a collateral proceeding.[3]
 
 
 12
 We recognize that a number of Courts, our own included, have denied relief to inductees in cases similar to this on the grounds that the area residence requirement is directory rather than mandatory. We are also aware that some Courts, including this one, have stated or implied that they might reach a different result if a member, necessary to establish a quorum, were not a resident of the county.[4] We cannot speak for the other Courts, but this Court now holds that the qualifications of a local draft board member are not subject to collateral attack, but must be challenged directly.[5]
 
 THE FATHERHOOD DEFERMENT
 
 13
 The second question raised is whether the District Court erred in holding that, because of 50 U.S.C.A.App. 460(b)(3),[6] it did not have jurisdiction to review the board's failure to grant Ryan a III-A classification when he submitted proof that his wife had conceived a child after his receipt of an induction notice but before he was actually inducted.
 
 
 14
 Section 460(b)(3) does not foreclose pre-induction review by a federal court where the underlying evidentiary facts are not in dispute and the registrant's claim is cast as a challenge to the legality of the Selective Service System's reading or application of relevant law, if, on investigation of the merits of the issue presented, the federal court determines that the board acted in a blatantly lawless manner.[7] Here, the evidentiary facts are not in dispute and the registrant challenges the Selective Service System's application of law. Thus, some investigation of the merits is required.
 
 
 15
 We read the Selective Service Act of 1967[8] as authorizing the President to grant or to withhold fatherhood deferments, and to determine the classes of persons to whom such deferments will be granted, if at all. Thus, the President could have limited the deferment to inductees whose children were born prior to receipt of notice of induction, or he could have extended it to all those whose wives had conceived prior to the date of induction. But the President took a middle course and limited the granting of fatherhood deferments because of unborn children to those inductees who notified the board that their wives were pregnant prior to their receipt of a notice of induction.[9] While we may or may not agree that the line is drawn equitably, we do believe that it poses any constitutional or legal problems. It is nothing more than a good faith effort to meet a difficult problem. Cf., United States v. Dell' Anno, 436 F.2d 1198 (9th Cir. 1971); United States v. Watson, 442 F.2d 1273 (8th Cir. May 11, 1971).
 
 
 16
 Our review of the regulation convinces us that there is no merit to Ryan's claim that he was entitled to a fatherhood deferment. He plainly and simply did not come within its terms.
 
 
 17
 Ryan next argues that the Board was required by 32 C.F.R. 1625.2(b) to reopen his classification. This regulation provides:
 
 
 18
 'The local board may reopen and consider anew the classification of a request of the registrant, * * * if such registrant (a) upon the written request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such a registrant an Order to Report for Induction (SSS Form No. 252) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.'We cannot see how this regulation is helpful to Ryan. Under the facts of the case, his wife's pregnancy would not '* * * if true, * * * justify a change in the registrant's classification * * *.' We have previously found the fatherhood deferment, when based on the existence of unborn children, to be limited by regulation to those persons who, prior to being sent an induction notice, inform the board of their impending fatherhood. Ryan did not meet this criterion. See Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Watson, supra.
 
 
 19
 A draft board, even after the issuance of an induction notice, may regard conception as a factor in finding a registrant eligible for a III-A hardship deferment,[10] but that case is not presented here. Cf. Talcott v. Reed, 217 F.2d 360 (9th Cir. 1954).
 
 
 20
 To the extent that United States ex rel. Kellogg v. McBee, 2 SSLR 3253 (N.D.Ill.1969), and United States v. Bruinier, 293 F.Supp. 666 (D.Or.1968), hold to the contrary, we decline to follow them.
 
 THE CONSCIENTIOUS OBJECTOR CLAIM
 
 21
 Ryan urges that his local draft board acted improperly in refusing to reopen his classification to consider his claim of conscientious objection. Any doubts about a registrant's right to reopening on this basis, after he has received an induction notice, were laid to rest by the Supreme Court's recent decision in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). Ehlert makes clear that a registrant has neither a statutory nor a constitutional right to reopening in such circumstances. Thus, the local board was within its discretion in refusing to reopen Ryan's classification. Drake v. Selective Service Local Board No. 50, Hennepin County, minnestota, 443 F.2d 101 (8th Cir. 1971). Ryan will still have an opportunity to present his claim to conscientious objector status after his induction. Ehlert v. United States, supra.
 
 
 22
 Ryan further maintains that the board acted improperly in refusing his request for a personal appearance to explain his request for conscientious objector status. We find no merit to this argument.
 
 
 23
 A registrant is entitled to a personal appearance only if (1) he requests on within thirty days of a reclassification, or (2) the board reopens his classification. 32 C.F.R. 1624.1(a), 1625.13; Davis v. United States, 410 F.2d 89 (8th Cir. 1969). See also, United States v. McQueary, 408 F.2d 493 (9th Cir. 1969), vacated on other grounds, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970); United States v. Jones, 384 F.2d 781 (7th Cir. 1967). Cf., United States v. Rundle, 413 F.2d 329 (8th Cir. 1969); United States ex rel, Vellrath v. Volatile, 308 F.Supp. 1025 (E.D.Pa.1970).
 
 
 24
 Ryan does not contend that he filed a timely request for a personal appearance, or that the board reopened his classification.
 
 
 25
 Since the board was not required to reopen Ryan's classification, Ehlert v. United States, supra, it was not required to grant his a personal appearance.
 
 
 26
 Affirmed.
 
 
 
 [1]
 50 U.S.C.A.App. 460(b)(3) provides in pertinent par:
 '* * * Each member of any local board shall be a civilian who is a citizen of the United States residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction * * *.'
 
 
 [2]
 At the time of the events giving rise to this appeal, the pertinent regulation, 32 C.F.R. 1604.52(c), stated:
 'The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.'
 Exec. Order No. 11,360, 3 C.F.R. 1604.52 (1967). The regulation has since been amended to remove the area residency requirement.
 
 
 [3]
 Ex Parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (1899); United States v. Brooks, 415 F.2d 502, 505 (6th Cir. 1969), cert. denied, 397 U.S. 969, 90 S.Ct. 1003, 25 L.Ed.2d 263 (1970); Clay v. United States, 397 F.2d 901, 911 (5th Cir. 1968), vacated on other grounds, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); DuVernay v. United States, 394 F.2d 979, n. 6 (5th Cir. 1968), aff'd by an equally divided Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); Jessen v. United States, 242 F.2d 213, 215 (10th Cir. 1957); United States v. Richmond, 274 F.Supp. 43, 61 (C.D. Cal. 1967)
 
 
 [4]
 United States v. Chaudron, 425 F.2d 605, 611 (8th Cir. 1970); United States v. More, 436 F.2d 938 (9th Cir. 1971); United States v. Berger, 434 F.2d 610 (9th Cir. 1970); United States v. Reeb, 433 F.2d 381 (9th Cir. 1970); Czepil v. Hershey, 425 F.2d 251, 252 (7th Cir. 1970)
 
 
 [5]
 United States v. Cabbage, 430 F.2d 1037, 1042 (6th Cir. 1970), would appear to reach a result contrary to the one we reach. In Cabbage, the Court stated:
 'We find it intolerable, however, to send appellant back for reclassification by a board which the United States government has stipulated to be improperly constituted under the Selective Service regulation (three members of a five-man board lived within the county but outside the board's area boundaries without any practical remedy for such violation. The principle of administration of the Selective Service system by potential draftees' 'friends and neighbors' is deeply buried in the history of the Selective Service Act. * * *'
 United States v. Lemke, 310 F.Supp. 1298 (N.D. Cal. 1969), is the best reasoned of the cases reaching a result different from ours.
 
 
 [6]
 50 U.S.C.A. App. 460(b)(3) also states:
 '* * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form * * *.'
 
 
 [7]
 Breen v. Selective Service Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Oestereich v. Selective Service Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968)
 
 
 [8]
 50 U.S.C.A. App. 456(h)(2) provides in part:
 '* * * Except as otherwise provided in this subsection, the President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes. * * *'
 
 
 [9]
 At the time of Ryan's request for III-A classification, 32 C.F.R. 1622.30 stated:
 '(a) In Class III-A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home and who is not a physician, dentist or veterinarian, * * * '(c)(3) No registrant shall be placed in Class III-A under paragraph (a) of this section because he has a child is not yet born unless prior to the time the local board mails him an order to report for induction which is not subsequently cancelled there is filed with the local board the certificate of a licensed physician stating that the child has been conceived, the probable date of its delivery, and the evidence upon which his positive diagnosis of pregnancy is based.'
 The fatherhood deferment provided by 32 C.F.R. 1622.30(a) was suspended by Exec. Order No. 11,527 (35 F.R. 6571, 6572, April 23, 1970), but the Order provides that those entitled to the deferment who requested it prior to the date of the Order shall still be entitled to it thereafter.
 
 
 [10]
 32 C.F.R. 1622.30(b)