**UNITED STATES of America,**

v.

**Robert Edwin AULL, Defendant.**

**No. 71 Cr. 509.**

United States District Court,
S. D. New York.

April 20, 1972.

---

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, New York City, for United States of America; George E. Wilson, Sp. Asst. U. S. Atty., of counsel.

Kunstler, Kunstler & Hyman, New York City, for defendant; Steven J. Hyman, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, charged with willful refusal to submit to induction into the Armed Forces,[1] waived trial by jury. Upon conclusion of the trial, the court granted the defendant's request for leave to submit briefs and reserved decision on his motion for judgment of acquittal.

The essential fact that the defendant intentionally and willfully refused to take the symbolic one step forward on April 7, 1971, when he reported and was found acceptable for induction is not in dispute. His assigned reason was that he was a conscientious objector. The defendant urges he is entitled to a judgment of acquittal upon two grounds: (1) that the failure of the Local Board and the Appeal Board to state adequately the reasons for denial of his application for conscientious objector classification (Class I–O)[2] was a denial of due process of law; and (2) that the Local Board's failure to forward to the induction center a letter from a psychologist and one from a drug center in support of his claim of medical disqualification was prejudicial error and in violation of Selective Service regulations.

Upon a thorough review of each document in defendant's Selective Service file, full consideration of the trial testimony, the arguments and briefs of counsel, I find that the claims are without substance and that upon the entire record the government has sustained its burden of proof as to each essential element, and accordingly find the defendant guilty.

The defendant registered with his Local Board in November 1968. In completing his classification questionnaire, he made no claim that he was a conscientious objector and was classified I–A on April 16, 1969. Previously, in September 1968, he had entered Syracuse University and in November 1969 was granted a II–S student deferment,[3] effective until September 30, 1970. Before that date, however, on June 25, he advised his Local Board he was leaving college and requested a conscientious objector classification. The Board promptly sent him the required form for conscientious objector application (SSS Form 150), which after some delay the defendant completed and returned to the Board on September 14, 1970. In answer to the inquiry as to the nature of his beliefs, he stated:

"I am a human animal born onto a planet with the right to freely pursue my own peace of mind. I have found that the purpose *we all* are here is to unite ourselves with the Lord. I repeat, I was born onto a *planet* not into a country. . . . Countries are something that narrow-minded men have created . . . I cannot see myself risking my life (my most precious possession) fighting or helping an entity that *truthfully* does not *exist!*"

In explaining the source of his beliefs, he wrote:

"I cannot give a source other than my entire life leading up to the point where total understanding occurred to me. All I can say is that it was similar to having the universe dissolve into a pool of clear and endless light. This experience happened in April of 1970."

His wife of three months provided the only support for his claim in a letter which, in addition to setting forth her own objections to the war in Vietnam and condemning the current state of American society, corroborated in conclusory terms the defendant's "be-

---

1. 50 U.S.C. App. § 462(a); 32 C.F.R. § 1632.14.

2. 32 C.F.R. § 1622.14.

3. 32 C.F.R. § 1622.25.

liefs against war in *any* form, and all killings regardless of motivations. . . . [H]e believes no motivations are justifiable for the destruction of another human being."

The Board granted the defendant a discretionary interview, which was conducted on October 7, 1970. At its outset a problem arose when the oath was administered to the registrant, to which he replied, "I will [do] the best I can." He sought to hedge his answers under oath "with a qualification requested," but said he had "no objections to telling the truth, but truth is something [he] cannot explain." He finally took an unequivocal oath when he was advised no interview would be granted if he "could not make up his mind to what reply was going to be given." He was told that any questions he did not understand would be clarified.

Aull testified that his thoughts had "firmed up" when he entered college (September 1968), but had been advised by the resident advisor there not to submit the SSS Form 150 at that time due to priority of draft eligibility. He stated that all wars were "pointless"; however, he would not commit himself as to whether a war is moral or immoral or justified. The file reflects that the four Board members who interviewed the defendant listened to him, considered the evidence in his file, discussed his case, and concluded: "[T]here is no valid reason for granting him a C.O. status. He failed to convince us that he was an objector who is sincerely conscientious about his claim, as he was not sure as to just why he was applying for a C.O. status." Accordingly, by a vote of 4-0, he was classified I-A.

Upon his appeal,[4] the Appeal Board continued his I-A classification.

The Supreme Court recently summarized the essential requirements to sustain a conscientious objector claim:

"In order to qualify for classification as a conscientious objector, a registrant must satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, [91 S.Ct. 828, 28 L.Ed.2d 168]. He must show that this opposition is based upon religious training and belief, as the term has been construed in our decisions. United States v. Seeger, 380 U.S. 163, [85 S.Ct. 850, 13 L.Ed.2d 733]; Welsh v. United States, 398 U.S. 333, [90 S.Ct. 1792, 26 L.Ed.2d 308]. And he must show that this objection is sincere. Witmer v. United States, 348 U.S. 375, [75 S. Ct. 392, 99 L.Ed. 428]."[5]

The Board found defendant had failed to meet the last requirement.

■ The court's power to review this finding is circumscribed. The Board's determination that the defendant was not entitled to conscientious objector classification must be upheld unless it is without basis in fact.[6] The record indicates there was ample basis in fact for the Board's determination that the defendant was not sincerely conscientious about his claim. The Board members at the interview listened to the defendant and noted his own statement that he was not sure "just why he was applying for C.O. status."

■ The defendant's demeanor, his answers and any fact which cast doubt as to his veracity[7] were factors that could properly be considered.[8] At the

4. Defendant was advised of his right of personal appearance before the Local Board, as well as of his right to the services of a government appeal agent, but did not avail himself thereof.

5. Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L.Ed.2d 810 (1971) (per curiam).

6. 50 U.S.C. App. § 460(b)(3); Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct.

392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

7. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

8. United States v. Gearey, 379 F.2d 915, 920 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

outset of the interview, the defendant's attempt to restrict his answers, which the Board members deemed of sufficient significance to note in defendant's file, could lead them to believe that he was parrying, and that his answers were evasive or calculated. When the Board sought information which was relevant on the issue of sincerity, he declined to commit himself as to whether a war is moral, immoral or justified, preferring to rely upon his original and general characterization that all wars were "pointless". And that the defendant, afforded ample opportunity to explain the basis of his views, did not himself appear to know why he was applying for conscientious objector status, also justified the Board's questioning the sincerity of his professed views.[9] In sum, his responses, whether they be deemed evasive, unsupportive of his professed beliefs, or unresponsive to proper inquiry, afforded a basis upon which the Board could rationally find that he was not "sincerely conscientious about his claim," particularly so since it had observed his demeanor and listened to his explanation of his beliefs.[10]

■ Other objective facts, while not specified by the Board, give added support to its finding of lack of sincerity.[11] Upon defendant's own statement, his thoughts firmed up when he entered college in September 1968 and had crystallized by April 1970; yet he delayed asserting his convictions to the Board until he was leaving college and faced imminent loss of his II–S classification.[12] Although he ascribed the delay to the advice of a resident advisor at college, no statement from the latter was offered.[13] Also it is significant that the SSS Form 150 gave wide latitude for submission of references [14]—whether parents, friends, associates, teachers, advisors, or any person or source to support his claim—yet not a single person was listed and, with the exception of his wife's, no letter was submitted attesting to his sincerity.[15]

9. The file record leaves no doubt that the defendant was capable of articulate expression. Indeed, after his claim had been rejected, the defendant submitted a 7-page typed explanation of his beliefs. *See* note 15, infra. "Not only the articulate may qualify for conscientious objector status, but even the uneducated must factually support their expressions of belief." Austin v. United States, 434 F.2d 1301, 1303 (5th Cir. 1970), cert. denied, 402 U.S. 1012, 91 S.Ct. 2196, 29 L.Ed.2d 435 (1971).

10. See United States v. Gearey, 379 F.2d 915, 920–921 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

11. *See* Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 99 L.Ed. 428 (1955). *See also* United States v. Gearey, 379 F.2d 915, 920 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

12. *See* Gruca v. Secretary of the Army, 141 U.S.App.D.C. 85, 436 F.2d 239, 245 (1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971); United States v. Gearey, 379 F.2d 915, 920–921 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967).

13. *Cf.* 32 C.F.R. § 1622.10; Austin v. United States, 434 F.2d 1301, 1303 (5th Cir. 1970), cert. denied, 402 U.S. 1012, 91 S.Ct. 2196, 29 L.Ed.2d 435 (1971); Landau v. Allen, 424 F.2d 668, 672 (6th Cir. 1970); United States ex rel. Luster v. McBee, 422 F.2d 562, 567 (7th Cir.), cert. denied, 400 U.S. 854, 91 S.Ct. 74, 27 L.Ed.2d 92 (1970); United States v. Primous, 420 F.2d 33, 35 (7th Cir.), cert. denied, 397 U.S. 1053, 90 S.Ct. 1395, 25 L.Ed.2d 669 (1970); Lingo v. United States, 384 F.2d 724, 727 (9th Cir. 1967).

14. "Among [the indications of the registrant's insincerity] is [his] failure to adduce evidence of any prior expression of his allegedly deeply felt religious convictions." Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 397, 99 L.Ed. 428 (1955).

15. In March 1971, after the defendant's induction order had been mailed and about 5 months after denial of his conscientious objector claim, letters in support thereof were received from his mother and several friends. The Board was of the view that this was not new information which required reopening of his claim. The letters in fact afforded no basis for reopening.

■■ While the defendant contends that the Local Board's statement of reasons was inadequate, the Board found the defendant's objection was not sincere and set forth a rational basis grounded upon the record and the defendant's appearance at the interview.[16] The Board's expressed reason for its finding of disbelief provided a basis for meaningful administrative review by the State Appeal Board [17] and judicial review to determine whether its finding had a basis in fact and was untainted by an erroneous legal standard. Due process requires no more.[18] A draft board composed of laymen is not, nor should it be, required to make detailed findings of fact as courts are, nor should its conclusions be so scrutinized.[19] Here the Board went beyond the definitive finding of insincerity and explicated its reason therefor. This clearly was sufficient.[20]

The defendant next contends he is entitled to an acquittal because of alleged procedural errors in the denial of his claim for medical disqualification. This was first advanced after his conscientious objector claim had been rejected by the Local Board and he was directed to report for a pre-induction physical examination on December 4, 1970. He was found fully acceptable for induction into the Armed Forces. On the "Report of Medical History" the defendant stated he had no drug or narcotic habit, and in response to the inquiry as to his present health, answered: "Physically OK. But my mind is in a state of confusion due to frequent flashbacks from LSD & similar drugs." The examining physician noted on the form: "multi psy prob. occ. flashbacks from use of LSD—Has not used drugs for 4 mo.—will doc." The medical officer, in the report, after finding that defendant was determined acceptable for military service, noted: "However, he claims ailments not verified by the medical officer and [registrant] has been advised to present documented evidence to substantiate claims to his selective

---

See 32 C.F.R. § 1625.2; Mulloy v. United States, 398 U.S. 410, 418 n. 7, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); United States v. Gearey, 368 F.2d 144, 149 (2d Cir. 1966), aff'd on rehearing, 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); cf. Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

16. Cf. United States v. Deere, 428 F.2d 1119, 1121–1122 (2d Cir. 1970).

17. See United States v. Speicher, 439 F.2d 104, 108 (3d Cir. 1971).

18. See United States v. Neamand, 452 F.2d 25, 31 (3d Cir. 1971); United States v. Andrews, 446 F.2d 1086, 1088 (10th Cir. 1971); United States v. Lenhard, 437 F. 2d 936 (2d Cir. 1970); Gruca v. Secretary of the Army, 141 U.S.App.D.C. 85, 436 F.2d 239, 244–245 (1970), cert. denied, 401 U.S. 978, 91 S.Ct. 1207, 28 L. Ed.2d 328 (1971); cf. Fein v. Selective Service System Local Bd. No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972).

19. See Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Andrews, 446 F.2d 1086, 1088 (10th Cir. 1971).
Since the Local Board both indicated it found the defendant insincere and provided a reason for its finding, it is unnecessary to determine wherher a bare statement of insincerity by itself is sufficient. Compare United States v. Andrews, 446 F.2d 1086, 1088 (10th Cir. 1971); United States v. Deere, 428 F.2d 1119, 1122 (2d Cir. 1970); and United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970) (en banc) with United States v. Neamand, 452 F.2d 25, 31 (3d Cir. 1971).

20. The Appeal Board was not required to restate the reasons given by the Local Board since upon the record there is no basis for any claim that it applied any erroneous legal standard, cf. Clay v. United States, 403 U.S. 698, 704–705, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971) (per curiam), and since there can be no doubt that it denied the defendant's conscientious objector claim because it agreed with the Local Board that the defendant was insincere. See United States v. Marcovich, 454 F.2d 138, 141–142 (9th Cir. 1972); United States v. Mount, 438 F.2d 1072, 1074 (9th Cir. 1970); United States v. Kember, 437 F.2d 534, 536 (9th Cir. 1970), cert. denied, 402 U.S. 923, 91 S.Ct. 1392, 28 L.Ed.2d 662 (1971); United States v. Verbeek, 423 F.2d 667, 668 (9th Cir. 1970).

service local board prior to his induction," and the Board was notified to like effect.

On December 10, 1970, the defendant wrote to his Local Board requesting a I–Y classification[21] on the ground of alleged mental instability resulting from the use of drugs, principally LSD. On December 15 the Board forwarded to him a copy of the Statement of Acceptability (DD Form 62) which it had received following the medical examination. The form indicated he had been found fully acceptable for induction, but distinctly warned in bold letters "REGISTRANT ADVISED TO PRESENT MEDICAL EVIDENCE TO SUPPORT UNVERIFIED AILMENTS." The Board followed this up with a letter on December 18, which requested him to submit "Doctor's statement concerning your physical condition or the ailments claimed at the time of your physical examination."

On December 22, 1970, the Board received a letter from one whose letterhead describes him as a clinical psychologist, who stated he was writing to the Board at the defendant's request. He added he was not clear why the request had been made since he had seen the defendant only once, nine months before, in April 1970, at the suggestion of the defendant's physician. The psychologist detailed what the defendant had told him about his drug experiences and emotional problems and that the defendant claimed he had been treated for an LSD trip at Bellevue Hospital, New York City, a year prior to his visit. The Board concluded that this was not new medical evidence which warranted submission to the induction center for a "papers only" review on the issue of defendant's claimed disability. The Board, on December 31, 1970, again wrote to the defendant requesting a doctor's statement concerning his alleged physical condition or other ailments, and also in bold type advised him "Psychiatrist's Medical Statement NOT PSYCHOLOGIST'S REPORT." He submitted no such report in response thereto. On January 11, 1971, the Board received a letter signed by a "Community Coordinator" of Argosy House, a drug treatment center, who stated defendant was participating in group therapy; that he had several "LSD recurrences" in the previous six months, and in his opinion it would be detrimental for defendant to be inducted into the Armed Forces.

When defendant reported at the induction center on April 7, 1971, since he had undergone a physical examination within the past year, he was afforded a physical inspection, including a review by the examining physician of his previous medical examination reports "and any accompanying additional documents."[22] But since the psychologist's letter and that from Argosy House were not included in his medical record file that was forwarded to the induction center, they were not before the medical officer who certified defendant as physically qualified for induction.

■■■ The defendant contends that the Board was under a duty to submit the letters to the induction center either for a "papers only"[23] review or for consideration by the medical examining officer at the time of defendant's physical inspection.[24]

21. 32 C.F.R. § 1622.17.

22. AR 601–270, ch. 4, § 2, ¶ 4–21(b) [1969].

23. Where a registrant, upon his initial examination, is found qualified for induction, and subsequently medical disability is claimed, the registrant may submit medical documentation for the claim; this information, together with his medical records, may be submitted for a "papers only" review to the induction center or the registrant may be ordered for a new physical examination. *See* Letter to State Directors, October 22, 1970, reprinted at 3 SSLR 2200:61, rescinded by Local Board Memorandum # 121, June 25, 1971, reprinted at 3 SSLR 2200:23; *cf.* Local Board Memorandum # 121, Part II, *supra.*

24. The Board is directed to assemble and transmit at the time of induction certain documents, including "all . . . information concerning the qualification of the

■ The defendant's claim is without substance. Obviously, neither letter complied with the specific request made of the defendant, first at the time of his physical examination, and later twice repeated by the Board, that he submit medical evidence in support of his claim [25]—they were not "documentary medical evidence." [26] The letter from the psychologist, in which he frankly stated he did not know why it had been requested, merely repeated what the defendant told him at the interview. It showed no treatment, made no diagnosis, provided no medical evaluation—it is entirely without medical significance. [27] So, too, the Argosy House letter is without the slightest medical significance; it is a bald request to the Board by a "Community Coordinator" that the defendant not be inducted. What is of significance is that petitioner failed to submit any statement from his treating physician, the one who referred him to the psychologist. There was no requirement under any regulation that non-medical information be forwarded to the induction center. [28]

■ Even if, contrary to the fact, these letters could be considered documentary medical material, or if, as the defendant contends, the Board was under a duty to submit to the induction center any material in defendant's file, even though it does not qualify as medical documentary information, the defendant was not prejudiced by the failure to submit the two letters. [29] All the information contained in the letters was already in the defendant's medical file when he was physically inspected by the medical examining officer at the induction center, who nevertheless found the defendant medically acceptable for induction.

The foregoing shall constitute the Court's Findings of Fact.

registrant for service in the Armed Forces . . . ." 32 C.F.R. § 1632.5.

25. Of course, the burden of proof was upon the defendant to establish facts which warrant a classification other than I–A. 32 C.F.R. § 1622.10; Austin v. United States, 434 F.2d 1301, 1303 (5th Cir. 1970), cert. denied, 402 U.S. 1012, 91 S. Ct. 2196, 29 L.Ed.2d 435 (1971); United States v. Enslow, 426 F.2d 544, 545 (9th Cir. 1970); United States v. Primous, 420 F.2d 33, 35 (7th Cir.), cert. denied, 397 U.S. 1053, 90 S.Ct. 1395, 25 L.Ed.2d 669 (1970).

26. See AR 601–270, ch. 4, § 2, ¶ 4.22(d) [1969] ("Additional documentary medical information. . . ."); AR 601–270, ch. 4, § 2, ¶ 4–20(h) (6) [1969] ("Documentary evidence.")

27. See United States v. Wilbur, 427 F.2d 947, 949–950 (9th Cir.), cert. denied, 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970).

28. Compare AR 601–270, ch. 4, § 2, ¶ 4.22 (d) [1969]; AR 601–270, ch. 4, § 2, ¶ 4–20(h) (6) [1969]; Letter to State Directors, October 22, 1970, reprinted at

3 SSLR 2200:61, rescinded by Local Board Memorandum # 121, June 25, 1971, reprinted at 3 SSLR 2200:23.

While the defendant relies upon the general regulation relating to the information to be submitted by the Board at the time of induction, 32 C.F.R. § 1632.5, when that information pertains to medical qualifications, it must be limited by the specific provisions which restrict the type of documentation which the induction center must consider and the Board forward. See also United States v. Wilbur, 427 F. 2d 947, 949–950 (9th Cir.), cert. denied, 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970).

29. See United States v. Wilbur, 427 F.2d 947, 949–950 (9th Cir.), cert. denied, 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970); cf. United States v. Pace, 454 F. 2d 351, 356 (9th Cir. 1972); United States v. Nobile, 451 F.2d 1121 (9th Cir. 1971) (per curiam); United States v. Lloyd, 431 F.2d 160, 166 (9th Cir. 1970), cert. denied, 403 U.S. 911, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971); United States v. Mathews, 327 F.Supp. 1362, 1367 (D. Mass. 1971).