**UNITED STATES of America,**
**Appellee,**

v.

**Robert Edwin AULL, Defendant-**
**Appellant.**

**No. 193, Docket 72–1740.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1972.

Decided Nov. 14, 1972.

George E. Wilson, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for Southern District of New

York, Peter F. Rient, Asst. U. S. Atty., of counsel), for appellee.

Steven J. Hyman and Kunstler, Kunstler & Hyman, New York City, for appellant.

Before SMITH, KAUFMAN and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Robert Edwin Aull has appealed from a judgment of conviction for willful refusal to submit to induction, 50 U.S.C. App. § 462(a), entered after a non-jury trial in the United States District Court for the Southern District of New York, Edward Weinfeld, Judge.[1] The sole question presented for review is whether appellant's Local Board erred in its handling of two letters submitted in support of a request for a psychiatric deferment. We find no error and affirm the judgment.

The facts are not in dispute. Aull first registered with the Selective Service in November, 1968. He received a student deferment, but in June of 1970, notified the Local Board that he had dropped out of college and wished reclassification as a conscientious objector. That request was denied by the Local Board on October 4, 1970; the New York State Appeal Board concurred on February 3, 1971.[2]

In the meantime, on December 4, 1970, Aull underwent a pre-induction physical examination. He was found fully acceptable for induction. At the time of the physical, Aull completed a Report of Medical History, Standard Form 89. In the space reserved for a description of present health, he wrote:

"Physically OK but my mind is in a state of confusion due to frequent flashbacks from LSD and similar drugs."

In the portion of the same form reserved for the physician's comments, the examining doctor wrote:

"Multi psy prob. Occ. flash backs from use of LSD—Has not used drugs for 4 mos—will doc."

On Standard Form 88, the Report of Medical Examination, the examining physician filled out the box labeled "Recommendations Further Specialist Examinations Indicated (specify)" with the words: "psy. letter." At the end of the form, the following stamped message appears:

"Registrant is determined acceptable. However, he claims ailments not verified by the medical officer and has been advised to present documented evidence to substantiate claims to his selective service local board prior to his induction."

On December 10, 1970, Aull wrote to the Local Board requesting a 1-Y deferment because of his LSD flashbacks. On December 15, the Board forwarded to Aull DD Form 62, a Statement of Acceptability, which it had received from the induction station. In the box entitled "Remarks," that form reads "Registrant Advised to Present Medical Evidence to Support Unverified Ailments." The Local Board followed this up with a form letter, dated December 18, requesting a "Doctor's statement concerning your physical condition or the ailments claimed at the time of your physical examination."

On December 22, the Local Board received a letter from Andrew L. Sopchak, Ph.D., a clinical psychologist certified in the State of New York. That letter stated that it was written at the request of Aull, that the reason for the request was "not very clear," and that Sopchak had seen Aull but once. The letter went on to recount Aull's descriptions of his drug problems, including treatment at

1. The opinion below is reported at 341 F. Supp. 389 (S.D.N.Y.1972).

2. Aull does not here renew his claim, rejected below, that the Board erred in denying his conscientious objector status.

Bellevue, and said that "On questioning it became evident that he has had world destruction fantasies." That letter was followed on January 11 by one from a Community Coordinator of Argosy House, a drug rehabilitation center. That letter stated that Aull was participating in group therapy there, had had several LSD flashbacks in the past six months, and that it would be very detrimental to his health to be inducted.

On December 31, obviously in response to Sopchak's letter, the Local Board sent Aull another copy of the form letter first mailed on December 18. In addition to requesting a doctor's statement, the Board added this notation: "Psychiatrist's Medical Statement Not Psychologist's Report."

Aull was ordered to report for induction on April 7. Since he had undergone a physical examination within the past year, he was afforded only a physical inspection, including a review of the previous medical examination reports "and any accompanying additional documents." AR 601–270, ch. 4, § 2, ¶ 4–21 (b) (1969). But the Local Board had refused to forward the two letters to the induction station, so there was no "documentation" before the medical officer who certified Aull fit for induction. Aull subsequently refused to take the symbolic step forward.

At the time of Aull's refusal to submit, a Local Board's duties with regard to claims about physical disabilities was defined by an October 27, 1970 letter from Selective Service headquarters to all State Directors, reprinted at SSLR 2200:61: [3]

"When a registrant under an order for induction makes inquiry concerning his physical acceptability . . . he shall be notified to bring any new documentation with him to the induction station at which time his condition will be evaluated. . . . If the registrant is not under an order

for induction, he will be instructed to furnish documentation. Upon receipt of such documentation, the local board may either return the examination papers and new information to the AFEES for paper evaluation, or, if circumstances warrant, order the registrant for a new examination."

Aull, who was not under an induction order when he submitted the two letters, argues that, at the least, this letter required a "papers review" of his case at the induction station. He also claims that the Board's action violated 32 CFR § 1632.5, which requires the assembling and transmittal at the time of induction "all . . . information concerning the qualification of the registrant for service in the Armed Forces."

Despite the broad language of these directives, however, it is clear that the Local Board would not have erred in failing to forward *any* letter, for example one by a local banker, that Aull submitted in ostensible support of his physical claims. Judge Weinfeld found, and we agree, that the Board's duty in this regard was defined specifically by two paragraphs of AR 601–270, ch. 4, § 2, then in effect. Paragraph 4.22(d) provided that:

"Registrants claiming, during the preinduction examination, that they can produce documentary medical information which would have a bearing on the determination of their acceptability for military service . . . will be informed that the information should be presented by them to their Selective Service local board. . . . Such registrants having medical documents in their possession or submitted by Selective Service local boards when returned for induction will have such documents referred to the medical officer. . . .

Registrants claiming a disqualifying defect that cannot be confirmed at AFEES will be required to substantiate such claim with a letter or simi-

3. This letter has since been rescinded. *See* Local Board Memorandum #121, June 25, 1971, reprinted at SSLR 2200:23.

lar evidence *from an attending physician.*"

(Emphasis added.) Paragraph 4-20h (6) is even more explicit:

"When documents prepared by physicians are submitted by the examinee in evidence of an existing physical condition which indicates that the individual has received treatment for a reported condition, such documents will be attached to each Standard Form 88. The weight to be given medical reports prepared by civilian physicians and submitted by or on behalf of examinees will be determined by the Chief, Medical Examining Section. *In this connection, only those documents prepared by doctors of medicine, doctors of osteopathy and doctors of dental surgery fully licensed to practice their professions in a State or territory of the United States, the District of Columbia, or the Commonwealth of Puerto Rico, need be considered.*"

(Emphasis added.)

■■ These two paragraphs make it abundantly clear that the "documentation" and "information" that the Local Board must forward to the induction station refers to letters and reports from doctors of medicine. *Cf.* United States v. Wilbur, 427 F.2d 947, 950 (9th Cir.), cert. denied, 400 U.S. 945, 91 S.Ct. 250, 27 L.Ed.2d 250 (1970). Neither letter submitted by Aull is within that category. Nor can it be contended that Aull was not apprised of this requirement; the record shows that the Local Board repeatedly requested a "Doctor's statement," and once told the registrant that such a statement must come from a psychiatrist, not a psychologist.[4]

It may well be, as Aull contends, that a psychiatrist's letter would not have contained more relevant information than did Sopchak's; it may also be the wiser policy to consider documentation arising from sources other than medical doctors.[5] But our task is not to devise the most desirable set of regulations for the Selective Service system, but rather to determine whether the lines the Executive has drawn are reasonable. *See* Ehlert v. United States, 402 U.S. 99, 101-103, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); Ryan v. Hershey, 445 F.2d 560, 564 (8th Cir.), cert. denied, Ryan v. Tarr, 404 U.S. 1004, 92 S.Ct. 565, 30 L. Ed.2d 557 (1971). The regulations here are valid, and the Local Board did not err in following them.

The conviction is affirmed.

IRVING R. KAUFMAN, Circuit Judge (dissenting):

Hard cases, it is said, often make for bad law. This appeal, however, is not a hard case at all. The Army Regulation in question has been superseded and replaced by a provision which today would require the Local Board to forward to the Army Examining Station a letter of the type written by Dr. Sopchak. We are told in the press that the war hopefully is drawing to a close (and with it the draft, the press optimistically adds), holding out the hope that cases of this type will not long continue to vex our judicial system. Neither of these considerations can be said in any sense to control the outcome of this case. But they do underscore the fact that the impact of this decision upon the overall policies governing our Selective Service System will at best be minimal, even while, for the defendant, the conse-

4. Alice Uslan, executive secretary of the Local Board, stated on cross-examination at trial that the request for a psychiatrist's report was prompted because "It was the policy of the board to consider qualified physicians' statements." On two separate occasions, she repeated her belief that the letters here were "not medical statements," and therefore did not need to be forwarded to the induction station.

5. AR 601-270, ch. 4, § 2, ¶ 4-20h(6) has now been amended to include documents prepared not only by doctors of medicine, but also by "other health care specialists." We need not now decide whether the psychologist's letter falls within this broader category.

quences of this conviction—grounded as it is in an erroneous interpretation of the applicable regulations—are likely to be seriously and permanently harmful. As I see it, the only issue presented for our consideration is the construction of the concededly conflicting Selective Service and Army Regulations involved in this case. The majority reads the Regulations in such a way as to permit a draft board—composed of laymen—to foreclose from consideration by Army doctors—specialists in their field—a letter written by a clinical psychologist certified by the State of New York to administer therapy and to serve professionally in the mental health area. That letter disclosed that a prospective soldier in the United States Army suffered from "world destruction fantasies" and "suicidal tendencies." In my view, a construction of the regulations under consideration here that would permit such information to be withheld from the Army is so fundamentally at odds with common sense and sound public policy as to be wholly unreasonable.

The facts in this case are not complex. At his preinduction physical on December 4, 1970, Aull stated on form DD89 that he was "Physically OK but my mind is in a state of confusion due to frequent flashbacks from LSD and similar drugs." He then was advised "to present documented evidence to substantiate [his] claims to his selective service local board prior to his induction." Subsequently, on December 22, 1970, Aull's local board received the Sopchak letter. This letter, however, did not accompany Aull's other records to the induction center where, after he passed a cursory physical inspection, Aull refused to take the symbolic one step forward.

The selective service regulation in point, 32 C.F.R. § 1632.5, required local boards to assemble and transmit to the induction center "all . . . information concerning the qualification of the registrant for service in the Armed Forces . . . ." The letter from Dr. Sopchak certainly appears within the scope of this directive. Regardless of the weight it ultimately might have been given, the statements made by Dr. Sopchak were relevant to Aull's claimed ineligibility because of psychiatric problems. It discussed Aull's drug experience, noted his admittance to Bellevue, and revealed that "on questioning it became evident that he has had world destruction fantasies" and "suicidal tendencies." Judge Weinfeld, below, believed that this information was "entirely without medical significance." I find that conclusion wholly inexplicable.

The majority holds that 32 C.F.R. § 1632.5 did not require the local board to forward Dr. Sopchak's letter because Dr. Sopchak is not a physician but a clinical psychologist. Support for this conclusion is asserted to come from Army Regulations 601–270, ch. 4, § 2, ¶¶ 4.20(h)(6), 4.22(d), which state that army physicians, in passing on an inductee's eligibility, only need consider documentary evidence prepared by a medical doctor.

But these Army Regulations do not purport to *limit* the evidence which Army medical examiners may consider. The Regulations clearly leave open to the examiners' discretion consideration of information provided by non-medical personnel. The Regulation simply states that this class of statements need not, but *may*, be considered. When a letter is arguably medically germane, as the Sopchak letter surely is, discretion whether or not to consider such evidence is properly lodged with medical experts. The majority reaches the opposite conclusion by allowing the Board to screen out letters of the kind written by Dr. Sopchak, thereby foreclosing consideration by the Army doctors of matters clearly within the area of their special expertise, and clearly without the area of the Board's competence. Thus Aull was permitted to pass by the last checkpoint in the induction process without having the Army ever consider his "world destruction fantasies" or "sui-

cidal tendencies," a result I simply do not see written into the scheme of regulations involved in this case.

There is no doubt that if the letter written by Dr. Sopchak had been prepared instead by a psychiatrist or ordinary physician in general practice but with no expertise in mental health, the local board would have been obliged to forward it to the induction center. This much was conceded by the Government at argument. But I cannot understand how any standard of "medical relevancy" can be made to turn on such a meaningless distinction. I agree, of course, that the local board is not incapable of screening out obviously frivolous documents. But a letter from a clinical psychologist about a registrant's mental health hardly falls in the same category as a banker's letter about a registrant's mental health, a fallacious argument which the majority has been compelled to make by virtue of its wooden interpretation of the Army Regulations. As I indicated earlier, Sopchak was a psychologist licensed by the state of New York. His letter noted that Aull was referred to him by Aull's physician, who obviously believed himself not as competent as Sopchak to appraise Aull's mental problems. Most important, Sopchak stated that "on questioning it became evident that [Aull] has had world destruction fantasies since his second LSD trip a year prior to his visit at which time he was treated at Bellevue Hospital in New York," and in addition, had experienced "suicidal tendencies." I am at a loss to understand why this was not as relevant to a consideration of Aull's qualifications to serve in the Army, as would an inductee's flat feet. The contents of the letter bore directly upon Aull's eligibility and fitness for service in the Armed forces. The Board's failure to forward the Sopchak letter was an abuse of discretion which may seriously have prejudiced Aull's position at his final induction physical.

Accordingly, I most respectfully dissent and vote to reverse his conviction.